*1042 Opinion
TIMLIN, J.
Introduction
Kimberley Renee Matthews (plaintiff) has appealed from a judgment entered in favor of defendants County of San Bernardino (County) and County Service Area 70, Improvement Zone G (CSA70), a special road maintenance district[1] (collectively defendants). Judgment was entered after defendants’ motions for summary judgment were granted.
Facts
Plaintiff, a minor, suffered serious injury to her left hand, which was crushed when the vehicle in which she was a passenger rolled over after striking the berm on the right-hand shoulder of Desert Front Road.[2]
Plaintiff sued County, CSA70, the Oaks Spring Valley Road Commission and several individual advisory road commissioners for “Negligent Road Maintenance,” negligence, and dangerous condition of public property to recover for injuries she sustained in the motor vehicle accident which took place on October 15, 1987, on Desert Front Road in an unincorporated area of County near Victorville. Plaintiff alleged that County “so negligently owned, leased, operated, controlled, designed, maintained, repaired, graded, supervised and managed Desert Front Road as to create and maintain it in a dangerous and hazardous condition that when said roadway was used as it was intended to be used it was dangerous, hazardous and unsafe.”
County and CSA70 answered, denying generally the allegations of the complaint and raising numerous affirmative defenses, including public entity immunities pursuant to numerous Government Code sections.[3] Particularly relevant to this appeal was defendants’ reliance on the immunity provision in Government Code section 831.3, as to which they specifically alleged that Nplaintiff’s injuries “occurred on account of the grading or the performance of other maintenance or repair on or reconstruction or replacement of roads *1043 which had not officially been accepted as part of the road system under the jurisdiction of the County, and such work was performed with reasonable care and left the roads in no more dangerous or unsafe condition than they were before the work commenced; and that by reason of the premises defendants are immune from liability herein under the provision of Government Code Section 831.3.”
Defendants also raised as an affirmative defense an exemption from liability under Streets and Highways Code section 941, alleging that the road in question, at the time of plaintiff’s injury, had not been accepted into the county-maintained road system by a resolution of the board of supervisors “or otherwise.”
In April, 1989, about six months after filing its answer, County moved for summary judgment on the grounds that “the moving party did not own, possess, or control Desert Front Road, including that portion of Desert Front Road which is approximately 1.3 miles north of State Route (SR) 2, as of the date of the alleged accident, nor had defendant at any time accepted Desert Front Road into i[t]s maintained road system as defined by Streets and Highways Code section 941.” In support of its motion, County filed a separate statement of undisputed material facts, which it contended included “every essential element to entitle this defendant to a judgment as a matter of law.” The facts alleged as undisputed were:
“Undisputed Fact No. 1:
“That plaintiff, . . . suffered bodily injuries as a result of a single-vehicle accident which occurred on October 15, 1987, at 1897 Desert Front Road, which is located approximately 1.3 miles north of State Route (SR) 2, near the community of Wrightwood, and in an unincorporated area of the County of San Bernardino.
“Proof:
“Undisputed Fact No. 2:
“That Desert Front Road, including that portion of Desert Front Road which is located approximately 1.3 miles north of State Route (SR) 2, is not, and at all times relevant to this motion was not, owned or controlled by the County of San Bernardino.
“Proof:
*1044 “Declaration of Fred V. Contaoi.
“Undisputed Fact No. 3:
“That Desert Front Road, including that portion of Desert Front Road which is located approximately 1.3 miles north of State Route (SR) 2, has not been accepted into, and at all times relevant to this motion was not, part of the San Bernardino County Maintained Road System.
“Proof:
“Declaration of Fred V. Contaoi.”
County’s memorandum of points and authorities in support of its motion pointed out that under government tort law, its liability was strictly statutory; that under Government Code section 830, it could be held liable for a dangerous condition of public property only if it owned or controlled the property in question; that Fred V. Contaoi, Assistant Director of the Transportation Department for San Bernardino County, had declared that County did not possess, own, control, design, maintain or repair the road in question; and that the road in question had never been accepted into County’s system of roads. Therefore, because of lack of ownership or control, County could not be liable to plaintiff. In addition, even if County did own or control the subject portion of Desert Front Road, it was not liable to plaintiff on the theory of dangerous condition or negligent maintenance, because the road had never been accepted into its road system, and, therefore, it was exempt under Streets and Highways Code section 941.
County’s motion for summary judgment was initially set for hearing in June 1989. Apparently no hearing was then held, nor did plaintiff file opposition to the motion at that time.
In October 1989, CSA70 filed its own motion for summary judgment, on the grounds that (1) the road in question had never been accepted into the system of county roads, and therefore CSA70 and County were both immune from liability under Streets and Highways Code section 941; and (2) CSA70 is a part of County and not a legal entity capable of being sued.
CSA70 filed a separate statement of undisputed material facts in support of its motion. In addition to reiterating some of the facts set forth in County’s separate statement of undisputed facts, CSA70’s statement of undisputed facts stated:
“Undisputed Fact No. 3:
*1045 “That [CSA70] was formed in 1971 by the Board of Supervisors of the County of San Bernardino to provide road services within the Improvement Zone Area.
“Proof:
“Attached Resolution of the Board of Supervisors.
“Undisputed Fact No. 4:
“That [CSA70] is a part of the County of San Bernardino and is not a separate entity.
“Proof:
“Exhibit ‘D,’ p. 8, lines 16-19.”
Exhibit “D” was pages from the deposition of Jeffrey Rigney, the supervisor of administrative services for County.
CSA70’s motion for summary judgment was set for hearing on December 20, 1989. On December 20, 1989, plaintiff filed her opposition to County’s and CSA70’s motions for summary judgment and a separate statement in opposition to County’s and CSA70’s statements of undisputed material facts.
Plaintiff, via her separate statement, agreed that she had been injured on the road in question, but disputed the contention that the road had never been admitted into the system of county roads, citing as proof the declarations of Frank Goossen, Anne Nolan and Eugene W. Comroe, a resolution of the board of supervisors, the deposition of Peter Sherburne, and the deposition of Jeffrey Rigney. She agreed that CSA70 had been created in 1971 to provide road services in the improvement zone area, but disputed the contention that CSA70 was not a legal entity separate from the county, citing as proof the same evidence noted above.
The evidence presented by plaintiff in opposition to both motions, when summarized, showed that (1) in 1971, the board of supervisors passed a resolution approving the formation of CSA70 with the intention to provide road services within such area and to assess the cost of such services against the property owners in that zone; (2) CSA70 was given the power to maintain the road by the county board of supervisors; (3) County, through its office of special districts, hires contractors to grade or maintain such roads; (4) CSA70 received about $3,000 in taxes every year; and (5) Mike Spies *1046 Construction Company (Spies) had been hired in 1987 for $7,000, to maintain the road in question and, as of May 9, 1989 (the date of Anne Nolan’s declaration) had, in fact, graded it.[4]
Plaintiff presented no evidence of a resolution by the County accepting Desert Front Road or the subject portion into the county road system.
Also on December 20, both defendants filed a joint reply to plaintiff’s opposition. The minute order for December 20 shows that both defendants’ motions were heard and granted. The formal order for entry of summary judgment in favor of CSA70 and County notes that the trial court fully considered the moving and responding papers, that “the action has no merit,” that plaintiff “has presented no triable issues of fact,” and that judgment is ordered to be entered in favor of defendants.
Discussion
A. County’s Motion for Summary Judgment
Although County’s motion for summary judgment was based in part on its contention that it neither owned nor controlled the road in question, and, consequently, was not liable to plaintiff on the theory of dangerous condition of public property, plaintiff clearly produced sufficient evidence to create a triable issue of fact as to County’s control of the relevant portion of the subject road on October 15, 1987.[5] It is therefore apparent that County’s motion was granted because the trial court concluded that, even assuming County did exercise control over the road, (1) the road had never been accepted into the county road system, and (2) Streets and Highways Code section 941 absolutely immunized County from liability for injuries and damages caused by its failure to maintain any road which has not been officially accepted into the county road system.
Streets and Highways Code section 941 now provides, in relevant part:
“(a) Boards of supervisors shall, by proper order, cause those highways which are necessary to public convenience to be established, recorded, constructed, and maintained in the manner provided in this division.
*1047 “(b) No public or private road shall become a county highway until and unless the board of supervisors, or its designee, by appropriate action, has caused the road to be accepted into the county road system. No county shall be held liable for failure to maintain any road unless and until it has been accepted into the county road system by action of the board of supervisors or its designee." (Italics added.)
Section 941 of the Streets and Highways Code was amended, effective January 1, 1989, by Statutes 1988, chapter 132, section 1.5, page 509. This amendment allowed a road to be accepted into the county road system by the board of supervisors or the board’s designee, and also provided, in keeping with that change, that the road could be accepted by appropriate action, as opposed to only by way of a resolution.
But, in 1987, at the time of plaintiff’s accident, the road in question could only have been accepted into the county’s road system by the board of supervisors, and only by way of a resolution. County contends, having established that no such resolution of acceptance was ever passed, that the road was never accepted and that it can never be liable for injuries occurring on an unaccepted road.
However, County’s reliance on Streets and Highways Code section 941, which simply precludes liability for failure to maintain unaccepted roads, does not consider the effect of Government Code section 831.3, which specifically excludes from immunity any act of grading, reconstruction, replacement, maintenance or repair to unaccepted roads if such work was not done with reasonable care and if such work left the road in a more dangerous or unsafe condition than it was in before the work commenced.
Section 831.3 is found in chapter 2, “Dangerous Conditions of Public Property” of division 3.6, “Claims and Actions Against Public Entities and Public Employees” of the Government Code. It was added by Statutes 1981, chapter 260, section 1, page 1337, and amended again in 1986 (with language not relevant here), and it provides, in relevant part:
“Neither a public entity nor a public employee is liable for any injury occurring on account of the grading or the performance of other maintenance or repair on or reconstruction or replacement of any road which has not officially been accepted as a part of the road system under the jurisdiction of the public entity if the grading, maintenance, repair, or reconstruction or replacement is performed with reasonable care and leaves the road in no *1048 more dangerous or unsafe condition than it was before the work commenced. . . .” (Italics added.)
In California Government Tort Liability Practice (Cont.Ed.Bar 1980) Professor Arvo Van Alstyne, after discussing the general principle that a public entity may be held liable for the dangerous condition of property which it either owns or controls (see id. at pp. 181-186), comments that “If the entity assumes actual responsibility for maintenance of an unaccepted street, it might be deemed ‘public property’ under the California Tort Claims Act, on the theory that the public entity has ‘control’ over it. [Citation.] However, the doctrine of acceptance by conduct (see . . . Union Transp. Co. v. Sacramento (1954) 42 Cal.2d 235, . . .) appears to have been abolished by statute. (Benitez v. [City and County of] San Francisco [(1978) 77 Cal.App.3d 918 (144 Cal.Rptr. 15)]. See 47 Ops.Cal.Atty.Gen. 191 (1966).)” (Id. at pp. 186-187.)
Notably, County here cites Benitez v. City and County of San Francisco (1978) 77 Cal.App.3d 918 [144 Cal.Rptr. 15] and 47 Ops.Cal.Atty.Gen. 191 in support of its position that it is absolutely immune from liability for injuries and damages resulting from accidents occurring on unaccepted roads. However, in the October 1990 supplement to California Government Tort Liability Practice (Cont.Ed.Bar Supp. 1990) (hereafter Supp.), the Honorable Jeffrey T. Miller, the supplement’s author, notes, as to this particular issue:
“In 1981, [Government Code section] 831.3 was enacted to provide for immunity from liability for injuries ‘occurring on account of the grading or the performance of other maintenance or repair’ work performed by a public entity on any road that has not been officially accepted as part of the entity’s road system. The immunity, which extends to both public entities and public employees, is not absolute; it applies only if (1) the road work in question ‘is performed with reasonable care,’ and (2) the work leaves the road ‘in no more dangerous or unsafe condition than it was before the work commenced.’
“While the wording of [Government Code section] 831.3 is broad enough to encompass injuries not arising out of dangerous conditions, its location in the Tort Claims Act and manifest intent is to restrict its application to cases under the Act. However, the qualifications attached to the immunity provided in this section appear to assume, without expressly so providing, that liability may properly be imposed when road work in question, although performed on private rights of way (i.e., roads not accepted as part of the public road system), is performed negligently or makes the road more dangerous than before. In this respect, [Government Code section] 831.3 *1049 appears to be at least partially inconsistent with [Streets and Highways Code sections] 941 and 1806 . . . (Supp., supra, at p. 78.)[6]
Actually, however, Government Code section 831.3 is not inconsistent with Streets and Highways Code section 941. Section 941 states that a county is not liable for failure to maintain unaccepted roads, while section 831.3 merely states that if public entities perform an act of maintaining, grading or repairing unaccepted roads, they may be liable if the work is not done with reasonable care and if the work leaves the road in a more dangerous or unsafe condition than it was in before the work began. Simply stated, section 941 immunizes a county from any claimed nonfeasance regarding its lack of maintaining unaccepted roads. Section 831.3 addresses in part a public entity’s misfeasance in its action of maintaining, grading or repairing an unaccepted road. Sections 941 and 831.3 are distinct. Each addresses different circumstances regarding the county’s liability if it maintains or does not maintain unaccepted roads in the county. It is also noteworthy that section 941 is limited to counties, while section 831.3 includes all public entities as described in Government Code section 811.2.
Having concluded that County is not entitled to absolute immunity as a matter of law merely because the road in question was not officially accepted into the county road system, without regard to whether County graded or maintained such unaccepted road, we also conclude that County has not established sufficient nontriable issues of material fact to entitle it to summary judgment.
*1050 As the moving party, County was required either to show, based on nontriable issues of material fact, that plaintiff could not prevail as to any element of any cause of action properly presented by the pleadings, or to establish every element of an affirmative defense or defenses that would bar every cause of action in the complaint. (DeRosa v. Transamerica Title Ins. Co. (1989) 213 Cal.App.3d 1390, 1397 [144 Cal.Rptr. 15]; Brejcha v. Wilson Machinery, Inc. (1984) 160 Cal.App.3d 630 [206 Cal.Rptr. 688].)
Here, County attempted to proceed on two grounds: (1) the affirmative defense of nonliability as to the allegation of dangerous condition of public property based on its lack of ownership and control of the subject road portion, pursuant to Government Code sections 835 and 830, subdivision (c), and (2) the affirmative defense of nonliability for damages and injuries incurred by users of unaccepted roads, based on Streets and Highways Code section 941.
As to County’s affirmative defense to the dangerous condition allegations based on Government Code sections 835 and 830, subdivision (c), plaintiff produced evidence in opposition which was sufficient to raise a triable issue of material fact as to County’s control of the road, thus preventing County from establishing as undisputed those facts necessary for a defense based on lack of ownership or control of the property.
As to County’s affirmative defense to the negligent maintenance and repair and dangerous condition allegations based on Streets and Highways Code section 941, County did not meet its initial burden of establishing all the undisputed facts necessary for such a defense. County produced uncontroverted evidence that the road had never been accepted into its road system so as to meet one requirement of the section 941 exemption from liability. However, County failed to produce any evidence that it had failed to maintain the road in question,[7] so as to establish a complete defense pursuant to Streets and Highways Code section 941.
In light of plaintiff’s uncontradicted evidence that County had maintained the subject portion of the road prior to the accident, County failed to produce any evidence that, to the extent it did maintain the road, “such work was performed with reasonable care and left the roads in ño more dangerous or unsafe condition than they were before the work commenced,”[8] so as to establish a defense pursuant to Government Code section 831.3 regarding *1051 the complaint’s allegation that it negligently repaired, graded and maintained the subject portion of Desert Front Road. Because County failed to meet its initial burden of producing evidence to support an affirmative defense under either Streets and Highways Code section 941 or Government Code section 831.3, plaintiff did not need to produce any evidence in opposition so as to be entitled to an order denying County’s motion for summary judgment.
Based on the foregoing, we conclude that the trial court erred in granting County’s summary judgment motion because there are triable issues of material fact whether the County’s maintenance, repair or grading work on the subject road before October 15, 1987, was done with reasonable care and left the road in no more dangerous or unsafe condition than before the work began.
B. CSA70’s Motion for Summary Judgment*
Disposition
The judgment in favor of defendant County is reversed. The judgment in favor of defendant CSA70 (County Service Area 70, Improvement Zone G), is affirmed. Plaintiff is awarded her costs on appeal.
Ramirez, P. J., and McDaniel, J.,† concurred.

In their answer to plaintiff’s complaint, defendants characterize themselves as “County of San Bernardino, a Political Subdivision of the State of California,” and “County Service Area 70, Improvement Zone G, a Special Road Maintenance District of the State of California.”

These facts, which were not at issue in connection with the motion for summary judgment which forms the basis for this appeal, are taken from the preliminary statement portion of County’s motion for summary judgment.

Specifically, County raised the following Government Code immunity sections in its affirmative defenses: sections 815, 815.2, subdivision (b), 815.4, 818.2, 818.6, 818.8, 820.2, 820.4, 820.8, 821, 821.2, 821.4, 822.2, 830.4, 830.6, 830.8, 831, 831.3, 831.4, 831.7, 835.4, and 840.6.

It is not clear from the evidence presented by plaintiff whether or not the road in question had been graded, maintained, or repaired by Spies, pursuant to a contract with CSA70, before the accident in question.

County apparently concedes that it exercised control over the relevant portion of the subject road when it states in its respondent’s brief “Even though the County provided maintenance to Desert Front Road. . . .”

In addition to suggesting that Government Code section 831.3 may be inconsistent with Streets and Highways Code sections 941 and 1806, Judge Miller also suggested that section 831.3 might "undercut, to some extent, the result reached in Benitez v. City & County of San Francisco (1978) 77 [Cal.App.]3d 918, . . . cited in Book § 3.7.” (Supp., supra, at p. 78.)
Benitez construed Streets and Highways Code section 1806 (the city equivalent of § 941) to immunize the city from liability for injuries suffered by the plaintiff on a road which had been dedicated to the City and County of San Francisco but never formally accepted, despite the fact that the road had been used by the public for 20 years, enough time for the public to have acquired a prescriptive right of way, and despite the fact that the city had erected a street sign. The court in Benitez concluded that by enacting Streets and Highways Code sections 941 and 1806, the Legislature intended to immunize cities and counties from liability for roads the dedication of which had never been explicitly accepted. (77 Cal.App.3d at pp. 920-922.) It also held that plaintiff, having failed to plead or prove equitable estoppel below, could not on appeal use the fact that the city had erected a street sign as a basis upon which to argue that the city was estopped from claiming it had not accepted the dedication of the road. (Id. at pp. 922-923.)
It is clear that nothing in Government Code section 831.3 undercuts either the holding that dedications may only be accepted expressly, not implicitly, or the holding that estoppel is a theory which must be pleaded and proved at the trial level, and may not be raised for the first time on appeal. Section 831.3 does not deal with methods or limitations regarding the acceptance of roadway dedications, nor with estoppel.

Notably, County even alleged in one of its affirmative defenses that plaintiff’s injuries “occurred on account of the grading or the performance of other maintenance or repair on or reconstruction or replacement of roads which had not officially been accepted as part of the road system under the jurisdiction of the County, . . .”

As alleged in defendants’ affirmative defense based on Government Code section 831.3.

See footnote, ante, page 1623.

Retired Associate Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chairperson of the Judicial Council.