[No. B002952. Second Dist., Div. One. Oct. 1, 1984.]

DON E. BREJCHA, Plaintiff and Appellant, v.
WILSON MACHINERY, INC., et al., Defendants and Respondents.

632

---

COUNSEL

Greene, O'Reilly, Agnew & Broillet, Donna Evans, O'Flaherty, Abrahams & Carl and Peter Abrahams for Plaintiff and Appellant.

Gary W. Sawtelle for Defendants and Respondents.

---

OPINION

HANSON (Thaxton), J.—Plaintiff Don E. Brejcha (plaintiff) appeals from a summary judgment in favor of defendant/respondent David Weisz Company (hereinafter defendant and/or Weisz). Defendant Weisz had sold a metal rolling machine to plaintiff's employer at an auction, upon which plaintiff allegedly sustained injuries by reason of the lack of a point of operation safety guard or an emergency cut-off switch. We affirm.

BACKGROUND

On January 4, 1980, plaintiff filed a complaint for personal injuries naming as defendants Wilson Machinery, Inc., a corporation, David Weisz Company (respondent herein), Star Metal Fabricators, and various named fictitious defendants. The complaint alleged causes of action for negligence, breach of warranty, and strict liability in tort seeking damages for loss of fingers while operating a rolling machine.

On May 9, 1980, defendant Weisz filed its answer to the complaint generally and specifically denying the allegations therein under the provisions of Code of Civil Procedure section 431.30, subdivision (d),[1] and alleging the affirmative defenses of negligence and assumption of risk.

---

[1]Hereinafter all code sections refer to the Code of Civil Procedure unless otherwise indicated.

On June 3, 1983, defendant Weisz filed a Motion for Summary Judgment pursuant to section 437c supported by points and authorities and declarations made under penalty of perjury by defendant Weisz' counsel and David H. Kaplan, controller of defendant Weisz' company, to which was attached Invoices of Sale as "auctioneers" to plaintiff's employer, San Jose Mixer Repair Service.

On June 22, 1983, plaintiff filed its memorandum of points and authorities in opposition to defendant Weisz' Motion for Summary Judgment without any counter affidavits.

On June 27, 1983, defendant Weisz' motion was heard. The court having considered all of the evidence set forth in the papers submitted, and all inferences reasonably deducible from such evidence, found there were no triable issues as to any material fact and entered judgment as a matter of law in favor of defendant Weisz and against plaintiff.

ISSUE

On appeal plaintiff contends that the trial court erred in granting the defendant Weisz' motion for summary judgment in that there are triable issues of material fact.

DISCUSSION

■ "The purpose of the summary judgment procedure is *not to try the issues,* but merely to determine *whether there are issues to be tried.*" (4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 191, p. 2840; italics original.) In short, "issue finding rather than issue determination is the pivot upon which the summary judgment law turns. [Citations.]" (*Walsh* v. *Walsh* (1941) 18 Cal.2d 439, 441 [116 P.2d 62].)

THE PLEADINGS

Plaintiff's complaint generally alleges as to all defendants that they were engaged "in the business of manufacturing, fabricating, designing, assembling, distributing, installing, selling, inspecting, servicing, repairing, marketing, modifying, leasing, and advertising and/or otherwise legally and actionably involved in the 'stream of commerce' of, metal rolling machinery and the component parts thereof, for use in Interstate Commerce and in the State of California."

In plaintiff's "FIRST CAUSE OF ACTION (Negligence)" it is alleged that all defendants at all times mentioned in said complaint, "negligently and

carelessly manufactured, fabricated, designed, assembled, distributed, bought, sold, inspected, serviced, marketed, warranted, leased, modified, and advertised and/or was otherwise legally and actionably involved in the 'stream of commerce' of a certain 'metal rolling machine' and each and every component part thereof, in that same was capable of causing and in fact did cause personal injuries to the user and consumer thereof, while being used in a manner reasonably foreseeable, thereby, rendering same unsafe and dangerous for use by the consumer, user or bystander."

In plaintiff's "SECOND CAUSE OF ACTION (Breach of Warranty)" it is alleged that all defendants "impliedly and expressly warranted to plaintiff, DON E. BREJCHA, that said metal rolling machine, and each and every component thereof, was fit for the purpose for which it was to be used and was free from design and manufacturing defects."

In plaintiff's "THIRD CAUSE OF ACTION (Strict Liability)" it is alleged that all defendants "manufactured, fabricated, designed, assembled, distributed, installed, sold, inspected, serviced, repaired, marketed, leased, modified, and advertised and/or was otherwise involved in a legally actionable manner in the 'stream of commerce' of a certain metal rolling machine, and each and every component part thereof, which metal rolling machine contained design and manufacturing defects in that same was capable of causing and in fact did cause personal injuries to the user and consumer thereof, while being used in a manner reasonably foreseeable, thereby rendering same unsafe and dangerous for use by the consumer, user or bystander."

## THE MOVING PAPERS

The declaration of defendant Weisz' counsel in support of the motion for summary judgment contains certain answers by plaintiff to the defendant's interrogatories which shows that plaintiff made no claim or contention that defendant Weisz had any connection with the rolling machine in question other than as an auctioneer which sold said machine at public auction.

The declaration states that the interrogatories propounded by defendant Weisz to plaintiff asked plaintiff to describe in specific detail each and every fact upon which plaintiff and/or his attorneys base the allegation in plaintiff's complaint that defendant Weisz negligently manufactured, fabricated, designed, assembled, distributed, bought, sold, inspected, serviced, marketed, warranted, leased, modified, advertised, or "was otherwise legally and actionably involved in the stream of commerce of said machine."

Plaintiff's response to this interrogatory, for the most part, answered "not applicable." However, as to the distribution of the machine, plaintiff an-

swered that he was informed and believed that defendant Weisz "was involved as a distributor and/or was otherwise legally or actually involved in the stream of commerce of said machine, *in that said defendant auctioned the subject product at a public auction on or about October 25, 1978."* (Italics added.)

As to the *inspection* allegation, plaintiff answered that defendant Weisz negligently inspected the subject product for defects which subject product in fact contained defects which were dangerous and could cause, and in fact did cause, severe and permanent injuries to plaintiff as complained of.

As to the warranty allegation, plaintiff answered that "as the distributor/seller of the subject product defendant warranted that said product was fit for the purpose for which it was intended."

Included in Defendant Weisz' Counsel's Declaration in Support of the Motion for Summary Judgment are plaintiff's response to "Requests for Admission of Facts" served on plaintiff on or about July 6, 1981, by co-defendant Wilson Machinery, Inc. as follows: "REQUEST No. 7: WILSON MACHINERY, INC. consigned the subject machine to Defendant DAVID WEISZ COMPANY to be sold at public auction 'as is.'

"RESPONSE: 'Admit.'

". . . . . . . . . . . . . . . . . . . . . . .

"REQUEST No. 8: 'The subject machine was sold at public auction without warranty of merchantability of fitness for particular use.'

"RESPONSE: 'Admit.'"

The declaration of David H. Kaplan, filed in support of defendant Weisz' motion for summary judgment, made under penalty of perjury, states:

"I am the Controller of Defendant DAVID WEISZ COMPANY (hereinafter referred to as WEISZ). The facts and matters herein stated are within my personal knowledge, and if called upon to testify, I can testify competently thereto.

"On October 4, 1978, WEISZ entered into a written 'Auction Agreement' with WILSON MACHINERY, INC. (hereinafter referred to as WILSON), by the terms of which WILSON authorized and retained WEISZ, Auctioneers, to act as WILSON's agent to sell at Public Auction on October 25, 1978 certain

personal property owned by WILSON and located at 1775 South First Street, in buildings 9, 11, and 21, in the City of San Jose, California.

"A true copy of said 'Auction Agreement' is attached hereto, marked Exhibit 'A'[2] and by reference made a part hereof as though set forth in full.

"Pursuant to said Agreement, WEISZ caused a direct mail brochure advertising said auction to be prepared, printed and distributed which said brochure listed the items to be sold at said Public Auction, which items included the set of Plate Rolls referred to in Plaintiff's complaint herein as a certain 'metal rolling machine.'

"At said auction, on October 25, 1978, said Plate Rolls were sold to SAN JOSE MIXER REPAIR SERVICE, said sale being evidenced by WEISZ' Invoice No. 7483, dated October 25, 1978, a true copy of which is attached hereto marked Exhibit 'B'[3] and by reference made a part hereof.

"As indicated on said invoice, the said Plate Rolls were sold 'As Is, WHERE IS' 'with warranty only as to Title, Quantities and Extensions.'

"At no time did WEISZ become the owner of said Plate Rolls. Said items were *consigned* to WEISZ by the owner, WILSON, solely for the purpose of being sold at public auction by WEISZ, and upon being purchased at the auction by the buyer, SAN JOSE MIXER REPAIR SERVICE, title was passed directly from WILSON to the buyer.

"At the time of the auction sale of said Plate Rolls on October 25, 1978, neither I nor any of the personnel of WEISZ possessed any expertise as to this particular product.

"As of the date of said auction sale, I was and am familiar with the meaning of certain expressions and nomenclature commonly and customarily used in the auctioneering business. The term 'As Is, WHERE IS' means that the item being sold has not been modified, altered, inspected, tested or operated by the auctioneer.

"Subject Plate Rolls and all other items offered for sale at the aforementioned auction on October 25, 1978 were subject to inspection by potential buyers prior to the date of the auction."

---

[2]Exhibit A is Invoice No. 7483 dated October 25, 1978, indicating the machinery was sold to San Jose Mixer Repair Service [plaintiff Brejcha's employer]. The letterhead shows "DAVID WEISZ CO." as "AUCTIONEERS."

[3]Exhibit B is a slip memorializing the sale which has printed at the bottom: "DAVID WEISZ CO.—AUCTIONEERS—LIQUIDATORS—APPRAISERS."

Plaintiff's papers in opposition to defendant Weisz' motion for summary judgment contained no counteraffidavits or declarations, and consisted of a memorandum of points and authorities generally arguing that strict liability in tort applies to any enterprise placing a product into the stream of commerce exempting from strict liability only those not engaged in an activity as part of a business (e.g., a housewife who as a casual seller may occasionally sell a jar of jam to a neighbor).

### THE APPEAL

On appeal, plaintiff essentially argues that defendant Weisz' moving papers failed to negate substantial issues of the fact regarding its potential strict liability for defects in the rolling machine and its potential liability arising out of plaintiff's allegations that it negligently inspected and repaired that machine. We disagree.

Defendant Weisz, in the court below, and here, argues that *Tauber-Arons Auctioneers Co.* v. *Superior Court* (1980) 101 Cal.App.3d 268 [161 Cal.Rptr. 789] (hg. den. Mar. 20, 1980) is dispositive and that the declarations contained in support of its motion for summary judgment, which are uncontradicted, leave no material issues of fact to be rendered in respect to the strict liability cause of action raised by the complaint. We agree.

In *Tauber-Arons Auctioneers Co.*, the Court of Appeal addressed for the first time in California the question whether a defendant who is in the business of selling secondhand products, who has not modified or rebuilt them, is strictly liable for defects in their original manufacture or design. In a well-reasoned opinion, the Court of Appeal concluded that the rule limiting liability of secondhand dealers in respect to defects created by the original manufacture as enunciated by the Oregon Supreme Court in *Tillman* v. *Vance Equipment Co.* (1979) 286 Ore. 747 [596 P.2d 1299][4] was consistent

---

[4]The reviewing court in *Tauber-Arons Auctioneers Co.* analyzed the New Jersey case of *Turner* v. *International Harvester Company* (1975) 133 N.J.Super. 277 [336 A.2d 62] (upholding strict liability in a secondhand dealer case) with the Oregon *Tillman* case and extensively commented upon, and quoted from, the latter case as follows: "In *Tillman* v. *Vance Equipment Co.* (1979) 286 Ore. 747 [596 P.2d 1299], the Oregon Supreme Court specifically considered the question of the liability of a seller of used machinery 'for a defect in a used crane when that defect was created by the manufacturer.' (*Id.*, at p. 1301.) The defendant, a 'used equipment dealer' (*id.*, at p. 1300), purchased a used crane and immediately resold it 'as is' to plaintiff's employer. Plaintiff was injured while attempting to grease the gear box and claimed that the design of the box was defective. The trial court judgment for defendant was affirmed. The court noted the decision of the New Jersey Superior Court in *Turner* as an example of a decision making risk-spreading the controlling consideration in the imposition of enterprise liability. After stating that it had never been willing to rely solely on this element, the Oregon Supreme Court continued in *Tillman* (596 P.2d at

with the public policy underlying California's strict liability doctrine as

pp. 1303-1304): 'Instead, we have identified three justifications for the doctrine: ". . . [C]ompensation (ability to spread the risk), satisfaction of the reasonable expectations of the purchaser or user (implied representational aspect), and over-all risk reduction (the impetus to manufacture a better product) . . ." *Fulbright* v. *Klamath Gas Co.*, 271 Or. 449, 460, 533 P.2d 316, 321 (1975). [¶] 'While dealers in used goods are, as a class, capable like other businesses of providing for the compensation of injured parties and the allocation of the cost of injuries caused by the products they sell, we are not convinced that the other two considerations identified in *Fulbright* weigh sufficiently in this class of cases to justify imposing strict liability on sellers of used goods generally. [¶] 'Our opinions have discussed, on other occasions, what we called in *Fulbright* the "implied representational aspect" of the justification for strict products liability. In *Heaton* v. *Ford Motor Co.*, 248 Or. 467, 435 P.2d 806 (1967), both the majority and the dissent indicated that at least in some cases it was for the jury to decide what degree of safety the average consumer of a product expects. However, in *Markle* v. *Mulholland's Inc.*, *supra*, 265 Or. 259, 509 P.2d 529, a majority of the court agreed that the question was not solely a factual one. The plurality opinion says: [¶] '. . . It is an expectation which is the result of the manufacturer's or seller's placing the article in the stream of commerce with the intention that it be purchased. This expectation is given legal sanction by the law through an assumption that the seller, by so placing the article in the stream of commerce, has represented that the article is not unreasonably dangerous if put to its intended use." 265 Or. at 268, 509 P.2d at 532. This representational aspect, the opinion continues, ". . . is one of limitation in an attempt to keep [the expansion of strict liability doctrine] within manageable and logical bounds and to keep the liability from being absolute." *Id.* [¶] 'By identifying this purpose of limitation we recognized that the court's role in defining the kinds of cases in which the law will permit a jury to find an expectation of safety serves a policy function. See, also, *id.* at 293-294, 509 P.2d 529 (Denecke, J., dissenting) and *Cornelius* v. *Bay Motors, supra*, 258 Or. at 581-582, 484 P.2d 299 (O'Connell, C.J., concurring). [¶] 'We consider, then whether the trier of fact may infer any representation as to safety from the sale of a used product. [¶] 'We conclude that holding every dealer in used goods responsible regardless of fault for injuries caused by defects in his goods would not only affect the prices of used goods; it would work a significant change in the very nature of used goods markets. Those markets, generally speaking, operate on the apparent understanding that the seller, even though he is in the business of selling such goods, makes no particular representation about their quality simply by offering them for sale. If a buyer wants some assurance of quality, he typically either bargains for it in the specific transaction or seeks out a dealer who routinely offers it (by, for example, providing a guarantee, limiting his stock of goods to those of a particular quality, advertising that his used goods are specially selected, or in some other fashion). The flexibility of this kind of market appears to legitimate interests of buyers as well as sellers. [¶] 'We are of the opinion that the sale of a used product, without more, may not be found to generate the kind of expectations of safety that the courts have held are justifiably created by the introduction of a new product into the stream of commerce. [¶] 'As to the risk-reduction aspect of strict products liability, the position of the used-goods dealer is normally entirely outside the original chain of distribution of the product. As a consequence, we conclude, any risk reduction which would be accomplished by imposing strict liability on the dealer in used goods would not be significant enough to justify our taking that step. The dealer in used goods generally has no direct relationship with either manufacturers or distributors. Thus, there is no ready channel of communication by which the dealer and the manufacturer can exchange information about possible dangerous defects in particular product lines or about actual and potential liability claims. [¶] 'In theory, a dealer in used goods who is held liable for injuries caused by a design defect or manufacturing flaw could obtain indemnity from the manufacturer. This possibility supports the argument that permitting strict liability claims against dealers in used goods will add to the financial incentive for manufacturers to design and build safe products. We believe, however, that the influence of this possibility as a practical factor in risk prevention is considerably diluted where used goods are involved due to such problems as statutes of limitation and the increasing difficulty

announced in *Price* v. *Shell Oil Co.* (1970) 2 Cal.3d 245 [85 Cal.Rptr. 178, 466 P.2d 722].

In *Tauber-Arons Auctioneers Co.*, the auctioneer filed a declaration stating that a substantial portion of its business was auctioning used industrial machinery; that it did not take title to the planer but sold it as agent for a concern going out of business; that at the time of the sale the planer was not a new machine and was sold "as is" without any representations being made as to its safety or quality. The Court of Appeal stated: "[W]e conclude that it was not appropriate for the trial court to declare that petitioner, *as a marketer,* was strictly liable on account of any defect in the Forsberg planer. Should the defect relied upon be a design defect created by the original manufacturer, the facts so far adduced would support nonliability for they show that petitioner had no special position vis-à-vis the original manufacturer and in fact played no more than a random and accidental role in the distribution of the Forsberg planer. It is unnecessary to decide whether petitioner may be strictly liable if the defect proven is the result of subsequent modification, dilapidation or misuse." (*Tauber-Arons Auctioneers Co.* v. *Superior Court, supra,* 101 Cal.App.3d 268, 284; italics original.)

In addition to the foregoing, the court in *Tauber-Arons Auctioneers Co.* observed in footnote 2 at pages 283-284 that: "This circumstance also increases the potential for injustice if dealers in used products are subjected to strict liability in respect of original design defects as plaintiffs now need only show proximate causation between design and injury, whereupon defendants have the burden of proof to justify the design under the risk benefit standard. (*Barker* v. *Lull Engineering Co., supra,* 20 Cal.3d at p. 435 [143 Cal.Rptr. 225, 573 P.2d 443, 96 A.L.R.3d 1].) Ordinary used dealers normally lack access to the information necessary to meet this burden."

■ Turning to the case at bench, it is uncontradicted, substantially as in *Tauber-Arons Auctioneers Co.,* that defendant Weisz was an auctioneer of industrial machinery, did not take title to the metal rolling machine but sold it at public auction "as is, where is," and "without warranty of merchantability of fitness for particular use" for codefendant Wilson Machinery, Inc. to plaintiff's employer, San Jose Mixer Repair Service. Title to the machine

as time passes of locating a still existing and solvent manufacturer. [¶] 'Both of these considerations, of course, are also obstacles to injured parties attempting to recover directly from the manufacturer. However, although the provision of an adequate remedy for persons injured by defective products has been the major impetus to the development of strict product liability, it cannot provide the sole justification for imposing liability without fault on a particular class of defendants. [¶] 'For the reasons we have discussed, we have concluded that the relevant policy considerations do not justify imposing strict liability for defective products on dealers in used goods, at least in the absence of some representation of quality beyond the sale itself or of a special position vis-à-vis the original manufacturer or others in the chain of original distribution. Accord: *Rix* v. *Reeves,* 23 Ariz.App. 243, 532 P.2d 185 (1975). [Fns. omitted.]' " (*Tauber-Arons Auctioneers Co., supra,* 101 Cal.App.3d 268, 279-282.)

passed directly from Wilson Machinery to the buyer, plaintiff's employer. It is further uncontradicted that the term "as is, where is" means that the items being sold have not been modified, altered, inspected, tested or operated by the auctioneer.

Accordingly, the court below properly granted a summary judgment in favor of defendant Weisz and against plaintiff in the third cause of action based on the doctrine of strict liability.

■■ We further hold that defendant Weisz' motion for summary judgment was also properly granted on the first and second causes of action based on negligence and breach of warranty, respectively.

Section 437c provides, in part, that the motion for summary judgment shall be supported by and the opposition thereto, shall consist of affidavits, declarations, admissions, answers to interrogatories, depositions and matters of which judicial notice shall or may be taken.

■ " ' "The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. . . . (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851-852 [94 Cal.Rptr. 785, 484 P.2d 953], quoting from *Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].) [¶] In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the *admissible evidence* set forth in the papers and all inferences reasonably deducible from such evidence, except summary judgment shall not be granted by the court based on inferences reasonably deducible from such evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact." (Italics added.) (Code Civ. Proc., § 437c.) [¶] The remedy is designed to terminate an action promptly where the purported cause of action or defense is sham or otherwise wholly unfounded. . . ." (4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 199, p. 2844.)' (*Bowden* v. *Robinson* (1977) 67 Cal.App.3d 705, p. 719 [136 Cal.Rptr. 871]).'' ' " (Italics in original; *Fosgate* v. *Gonzales* (1980) 107 Cal.App.3d 951, 954-955 [166 Cal.Rptr. 233].)

Here, the plaintiff filed no counter affidavits or declarations to defendant Weisz' declarations in support of the motion, although about three and one-

half years had elapsed between the time of filing the *unverified* complaint on January 4, 1980, and the granting of the motion on July 18, 1983. The record does not reflect a motion by plaintiff for continuance in order to conduct additional discovery.

■ It is clear from the record that defendant auctioneer Weisz had no role in the manufacture, fabrication, design or assembly of the machine in question. We are aware of no statutory or decisional law, and no such authority has been cited by plaintiff, which places upon an auctioneer at public auction the *duty* (an essential element in a negligence cause of action) to inspect or service the machine in question. As in *Tauber-Arons Auctioneers Co.* v. *Superior Court, supra,* 101 Cal.App.3d 268, defendant Weisz "in fact played no more than a random and accidental role in the distribution" and title was passed directly from codefendant Wilson to plaintiff's employer. It is uncontradicted that in the custom of the auctioning trade, the term "as is, where is" means that the item being sold has not been modified, altered, inspected or operated by the auctioneer.

■ It is also uncontradicted, and the plaintiff has admitted, that "the subject machine was sold at public auction without warranty of merchantability of fitness for particular use." There can be no breach of a warranty that does not exist.

DISPOSITION

The judgment is affirmed.

Spencer, P. J., and Leetham, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 13, 1984. Bird, C. J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.