John C. PELNAR, Jr., Plaintiff,

v.

ROSEN SYSTEMS, INC. and
Transportation Insurance
Company, Defendants.

No. 95–C–611.

United States District Court,
E.D. Wisconsin.

May 16, 1997.

William B. Kulkoski, Green Bay, WI, for plaintiff.

L. William Staudenmaier, Milwaukee, WI, for defendants.

### DECISION AND ORDER

GOODSTEIN, United States Magistrate Judge.

John C. Pelnar, Jr. [hereinafter "Pelnar"] commenced this action in the circuit court for Manitowoc County, Wisconsin, seeking to recover damages against Rosen Systems, Inc. [hereinafter "Rosen"] for a hand injury Pelnar sustained while working a bending roll machine that he operated in the course of his employment at Wm. Schaus & Sons [hereinafter "Schaus"]. Schaus purchased the bending machine at an auction Rosen conducted. The complaint alleges that Pelnar is entitled to damages under either the doctrine of strict products liability or under ordinary negligence. On June 7, 1995, Rosen removed the action to federal court on the basis of diversity of citizenship and amount in controversy.

This case was randomly assigned to this court and the parties have consented to the full jurisdiction of this court pursuant to 28 U.S.C. § 636(c). Jurisdiction is proper based upon the existence of diversity of citizenship. 28 U.S.C. § 1391. Venue is proper in the Eastern District of Wisconsin. Currently pending before the court is Defendant Ro-

sen's motion for summary judgment, which is fully briefed and ready for resolution.

In its motion for summary judgment, Rosen asserts that Pelnar's claims satisfy neither the requirements of strict liability nor those of negligence. As to the former, Rosen argues that Wisconsin and other jurisdictions have determined that a used product seller, under circumstances similar to Rosen's, is not strictly liable under § 402A of the Restatement (Second) of Torts. As to the latter, Rosen submits that it owed no duty to the plaintiff.

## I. Factual Findings

The parties have filed a stipulation of uncontested facts for purposes of summary judgment. They can be briefly summarized as followed:

Pelnar was an employee of Schaus on July 1, 1994, when he was injured while operating a Reed Model 606 bending roll machine [hereinafter "the bending machine"] owned by Schaus and used in the course of Schaus' business. The bending machine on which Pelnar was injured was purchased by Schaus at an auction conducted by Rosen in September, 1991.

Rosen is primarily engaged in the business of appraising and auctioning used machinery. Rosen does not repair, rebuild or modify machinery. It employs no engineers.

The bending machine was one of some forty (40) machines acquired by Rosen from the Excel Sheet Metal Company [hereinafter "Excel"], which was going out of business. The machines owned by Excel were manufactured by a variety of companies. Rosen took title to the machinery for purposes of the auction only, but the machinery itself remained in the Excel plant where the auction was conducted.

To advertise the auction of the Excel machines, Rosen mailed a brochure to prospective customers, including Schaus, describing the machines being offered. The brochure noted on the first page that "all purchasers accept the items to be sold in 'as is' 'where-is' condition." The brochure also indicated that inspection was permitted on the day prior to the sale. Schaus management understood that they were buying the bending machine "as is" and "where is." Subsequent to a purchase at a Rosen auction, neither invoices nor any accompanying documents given to buyers include the phrase "as is." After receiving a brochure, a Schaus representative contacted Rosen. Schaus agreed by letter to pay up to $7,000 for the bending machine. Schaus was the successful bidder on the bending machine.

The bending machine was shipped to Schaus, at Schaus' expense, directly from the premises of Excel Sheet Metal. The machine was never on the Rosen premises. Rosen possesses no facilities used to hold and prepare equipment for sale at its auctions. Schaus did not request, and Rosen did not provide, any servicing, rebuilding, or modification of the bending machine.

Pelnar worked at Schaus for approximately ten (10) months prior to his injury. Pelnar's injury occurred during the first day he operated the bending machine alone. Pelnar was injured while running the first piece of metal through the bending machine. At all times material to this action, Schaus had never modified the front end of the bending roll machine. Schaus admits that the danger of becoming injured as a result of getting a hand caught in the rollers of the bending machine are open and obvious.

## II. Summary Judgment

A motion for summary judgment will be granted when there are no genuine issues as to material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). As provided under Rule 56(c), only "genuine" issues of "material" fact will defeat an otherwise "proper" motion for summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "[M]aterial" facts are those facts which, under the governing substantive law, "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

The movant bears the burden of establishing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *see also Celotex Corp. v. Catrett*, 477 U.S. at 323, 106 S.Ct. at 2552–53. In addition, the moving party may meet its burden of showing an absence of a material issue by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2554. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513–14; *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir.1988); *Spring v. Sheboygan Area School Dist.*, 865 F.2d 883, 886 (7th Cir.1989). If the moving party meets its burden, the nonmoving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

In diversity cases such as this, the principles of Wisconsin conflicts of law apply. The parties proceed on the basis that Wisconsin substantive law applies, and this court concurs. Since Wisconsin has adopted the statutory language of § 402A of the Restatement (Second) of Torts in *Dippel v. Sciano*, 37 Wis.2d 443, 155 N.W.2d 55 (1967), although it has not adopted the comments, strict liability under § 402A of the Restatement (Second) of Torts applies to this case.

## III. Analysis

### A. Strict Liability

The first issue to be decided is whether § 402A of the Restatement (Second) of Torts should be applied to a seller of a used product. § 402A states:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402A (1965).

In applying § 402A to this case, both Rosen and Pelnar rely on Wisconsin case law. However, the Wisconsin cases reach opposite results as to whether § 402A applies to sellers of used products. Each party also refers to cases from other states to support their respective arguments.

The defendant Rosen moves for summary judgment alleging that, as a seller of a used product, it cannot be held strictly liable under § 402A of the Restatement (Second) of Torts. Alternatively, should the court find that Rosen may be held strictly liable under § 402A, Rosen argues that the alleged defect constitutes an open and obvious danger exempting it from the ambit of § 402A. Rosen relies primarily on *Burrows v. Follett and Leach, Inc.*, 115 Wis.2d 272, 340 N.W.2d 485 (1983), in which the court did not find a seller of a used corn picker strictly liable under § 402A.

The facts of *Burrows* can be summarized as follows. The plaintiff, Leonard Burrows [hereinafter "Burrows"], sued the defendant, Follett and Leach, Inc. [hereinafter "Follett"] seeking to hold Follett liable for serious injuries Burrows sustained after becoming caught in the unguarded power take-off shaft of the used corn picker he purchased from Follett. Follett's business primarily involved the sale of new farm equipment and feed. *Burrows*, 340 N.W.2d at 487. The defendant acquired the used corn picker on a trade-in. *Id.* Follett did not regularly deal in equipment manufactured by Minneapolis–Moline, the manufacturer of the corn picker.

*Id.* Follett made no express representations as to the safety of the used corn picker. *Id.* at 485. The court found the unguarded power take-off shaft on the corn picker was an open and obvious defect. *Id.* Neither Burrows nor Follett attempted to purchase or replace the guard. *Id.* at 488.

Pelnar relies on *Nelson v. Nelson Hardware, Inc.,* 160 Wis.2d 689, 467 N.W.2d 518 (1991), arguing that *Nelson* is distinguishable from the *Burrows* decision and that a seller like Rosen may be held strictly liable. Specifically, the *Nelson* court concluded that its decision in *Burrows* "does not preclude the imposition of strict liability" merely because the product is a used product. *Nelson,* 467 N.W.2d at 525. Pelnar also argues that strict liability should be applied to the defendant as a used product seller if, under the same circumstances, it would be subject to strict liability as a new product seller.

*Nelson* involved the following fact situation. The plaintiff, Bryan Nelson [hereinafter "Nelson"], sued the defendant, Nelson Hardware, Inc. [hereinafter "Hardware"] seeking to obtain damages for a hand injury Nelson sustained when a used shotgun Nelson's father purchased from Hardware accidentally discharged when the gun fell on the ground. Hardware was primarily engaged in the business of selling a variety of retail merchandise, including new and used guns. *Nelson,* 467 N.W.2d at 519–20. Hardware was not a regular dealer in products manufactured by Savage Industries, Inc., the manufacturer of the gun purchased by Nelson. *Id.* Hardware contended that it inspected the gun when it acquired the gun in trade, but found no apparent defects. *Id.* at 519. The defects in the gun were not open and obvious, but latent. Hardware did not make any modification, alterations or changes to the gun prior to its sale to Nelson's father. *Id.* It was disputed whether Hardware made any representations to Nelson's father as to the quality of the gun. *Id.* at 521.

The court finds that the *Burrows* case, cited by the defendant, is persuasive because it is more factually similar to the present case. Both *Burrows* and *Nelson* are Wisconsin Supreme Court cases, and both cases use the same policy criteria in determining their outcomes. *Nelson* does not overrule *Burrows.* The factual variations between them is the compelling factor. The court finds the defendant Rosen in this case most factually resembles the seller in *Burrows.* This case includes the following factual similarities to *Burrows:* (1) the plaintiff was injured when he became caught in a piece of machinery. *Burrows,* 115 Wis.2d at 274, 340 N.W.2d at 487; (2) the defendant seller had never been a dealer for the manufacturer of the machine responsible for injuring the Plaintiff. *Id.;* (3) neither party attempted to make any modifications to the machine either prior to or subsequent to the sale. *Id.* at 275, 340 N.W.2d at 488; and (4) the defects in the machinery were open and obvious.

Conversely, the facts in *Nelson* are more dissimilar to those in this case: (1) the plaintiff was injured when a used shotgun accidentally discharged after falling to the ground. *Nelson,* 160 Wis.2d at 690, 467 N.W.2d at 519; (2) the seller visually inspected the gun before selling it to the plaintiff, finding no apparent defects. *Id.;* (3) the defendant's store was engaged in the business of selling a wide variety of retail merchandise, including new and used guns. *Id.* at 691, 467 N.W.2d at 520.

Both parties refer to cases from other jurisdictions, and these cases reveal that the states are split on the issue. This lack of uniformity on whether or not sellers of used products should be held strictly liable was recently pointed out by the Seventh Circuit Court of Appeals in the case of *King v. Damiron Corporation,* 113 F.3d 93 (7th Cir. 1997). In that diversity case, the Indiana district judge determined that the law of Connecticut applied, but unfortunately, the Connecticut courts had not as yet decided the issue. The Seventh Circuit said that "absent guidance from Connecticut, the district court may look to other jurisdictions in its effort to determine how the Supreme Court of Connecticut would decide the issue." *King,* at 95 After reviewing a number of various state court decisions, the *King* court observed that, although the states are split, the cases "demonstrate that a majority of states weighing in on this have decided *against* extending strict liability to sellers of

used goods who, as with Damiron, have not modified or repaired the product and who have sold it 'as is.'" *King* at 96–97.

Looking to other jurisdictions, Rosen relies on the Oregon Supreme Court case, *Tillman v. Vance Equipment Company*, 286 Or. 747, 596 P.2d 1299 (1979), cited in *Burrows*; and a factually similar California case, *Tauber–Arons Auctioneers Co., Inc. v. Perez*, 101 Cal. App.3d 268, 161 Cal.Rptr. 789 (1980), also citing *Tillman*. The courts in both cases concluded that, based upon relevant policy considerations, strict liability should not be imposed on dealers selling used goods, absent some representation regarding the quality of the specific product.

Both *Tillman* and *Tauber–Arons* are based on sound reasoning. Moreover, those cases are more factually similar to the case at bar than the cases cited by the plaintiff from other jurisdictions. The *Tillman* case, on which *Burrows* relies, involves the following fact similarities to this case: (1) the defendant, a used goods seller, sold to the plaintiff's employer the piece of machinery that injured the plaintiff. *Tillman*, 596 P.2d at 1300; and (2) defendant sold the used product to employer "as is." *Id.* Even more compelling are the factual similarities between *Tauber–Arons* and this case: (1) plaintiff suffered injuries while in the course of his employment, *Tauber–Arons*, 161 Cal.Rptr. at 790; (2) the plaintiff's employer purchased the used machinery at an auction conducted by the defendant, *id.* at 271, 161 Cal.Rptr. at 790; (3) defendant had been exclusively engaged for a number of years in the business of auctioning off used machinery and equipment including a wide variety of different types of machines manufactured by a large number of different manufacturers, *id.*; (4) the defendant advertised his auction via the mail, *id.*; (5) the defendant did not perform any maintenance or repair on any of the auctioned equipment, and sold all equipment "as is," *id.* 161 Cal.Rptr. at 791; (6) the defendant had no expertise as to the design of the machinery. *Id.*

■ Under Wisconsin law, in deciding whether it is appropriate to impose strict liability on the defendant, the court must determine whether the requirements of § 402A are satisfied. In this analysis, the reasoning of the *Tillman* and *Tauber–Arons* cases is instructive. The defendant claims that its status as a used product seller places it outside the boundaries of § 402A. The court finds that Rosen fails to satisfy one of the required criteria of § 402A that is necessary to hold a seller strictly liable. Specifically, Rosen does not satisfy § 402A(1)(a) which requires a seller to be "engaged in the business of selling such a product." This is a threshold determination; for if Rosen is not engaged in the business of selling such a product, he may not be held strictly liable under the terms of the Restatement.

Examining the facts presented, it is apparent that Rosen is not in the business of selling any particular product or product line. The defendant's business primarily involves appraising and auctioning used machinery and not selling any particular type of machinery. In fact, the type of machinery Rosen presents at its auctions is dependent on the nature of the business from which it has obtained its selection. It is entirely possible that Rosen could conduct numerous auctions without ever procuring another bending machine similar to that purchased by Schaus. The brochure from which Schaus selected the bending machine evidences the diversity of the products classified as "used machinery." For example, along with machines like the bending machine, the brochure also advertised pick-up trucks to be auctioned. Characterizing the defendant as being in the business of selling "used machinery," when that category encompasses a seemingly vast and unrelated group of products, misconstrues the language of § 402A. It is unlikely that the Restatement contemplates that § 402A(1)(a) should include a seller such as Rosen.

The guidance provided in the Comments also support this court's conclusion that Rosen does not satisfy the terms of § 402A. Although Wisconsin has not officially adopted the Comments, they are instructive and Wisconsin courts utilize them in analyzing strict liability issues. Comment f admonishes that § 402(1)(a) should not be applied to "the occasional seller ... who is not engaged in that activity as part of his business." Re-

statement (Second) of Torts, Comment f. The facts of the case indicate that Rosen qualifies as an "occasional seller" as opposed to a seller in the business of selling a particular product.

The cases' interpretation of § 402A(1)(a) would also exclude a seller like the defendant from the reach of § 402A. The *Burrows* court refused to apply strict products liability where a seller "was not [a] regular dealer in that type of used equipment ..." *Burrows,* 115 Wis.2d at 272, 340 N.W.2d 485. Rosen is primarily engaged in the business of appraising and auctioning used machinery. Rosen, similar to the defendant in *Burrows,* had never been a dealer for any manufacturer of the used goods they sold. In *Tauber–Arons,* the court notes that the,

> [p]etitioner was shown to have been engaged for many years in the business of conducting auction sales of used machinery of all categories ... [T]here was no showing whatever that petitioner occupied any special position with respect to [the manufacturer]; [The manufacturer] was simply one of the innumerable machinery manufacturers whose products might be auctioned secondhand by petitioner.

*Tauber–Arons,* 161 Cal.Rptr. at 791. Moreover, the *Tauber–Arons* court refused to impose strict liability on a seller whose only connection between itself and the manufacturer's product is "random and accidental." *Id.* at 793. "[T]here is nothing to suggest that [the seller] was a conduit for the production or distribution of [the manufacturer's product]. [The seller] was no more than a one time 'occasional seller' who does not become subject to strict liability for manufacturing or designing defects." *Id.* Rosen is almost factually indistinguishable from the auctioneer in *Tauber–Arons,* and as in that case, this court believes that Rosen qualifies as an "occasional seller."

The *Nelson* court, however, held that a claim for strict liability will survive under the circumstances present in that case, where "other elements requisite for liability under § 402A are present." *Nelson,* 160 Wis.2d at 698, 467 N.W.2d at 521. The court referred to the language of § 402A covering a seller who sells "such" a product. *Id.* at 694, 467

N.W.2d at 523. The seller in *Nelson* sold firearms (whether or not primarily from the same manufacturer is irrelevant), and the particular shotgun that caused the injury was "such a product." *Id.* On the other hand, Rosen's auctions consist of a variety of different used machinery and cannot be characterized as "such a product."

Nor do the public policy objectives underlying the application of strict liability support the inclusion of Defendant Rosen within the reach of § 402A. Wisconsin's adoption of § 402A in *Dippel v. Sciano,* 37 Wis.2d 443, 155 N.W.2d 55 (1967), first articulated the policy reasons for applying strict liability in tort:

> [T]he seller is in the paramount position to distribute the costs of the risks created by the defective product he is selling ... In justification of making the seller pay for the risk, it is argued that the consumer or user has the right to rely on the apparent safety of the product and that it is the seller in the first instance who creates the risk by placing the defective product on the market.

*Burrows,* 115 Wis.2d at 278, 340 N.W.2d at 488–89 (*citing Dippel,* 37 Wis.2d at 450–51, 155 N.W.2d 55). The court in *Dippel* emphasized that strict liability should not be confused with absolute liability. *Burrows,* 115 Wis.2d at 278, 340 N.W.2d at 489 (*citing Dippel,* 37 Wis.2d at 460, 155 N.W.2d 55). This court notes that even if a court refuses to apply strict liability to a seller like Rosen, under appropriate circumstances, a seller of used goods may still be found liable based on other grounds (e.g., negligence). § 402A Restatement (Second) of Torts, Comment a.

*Tillman* articulates relevant policy considerations, such as compensation (ability to spread the risk), satisfaction of the reasonable expectations of the purchaser or user, and overall risk reduction. *Tillman,* 596 P.2d at 1303. The Supreme Court of Wisconsin, as well as the California Court of Appeals, approve applying the *Tillman* policy considerations to strict liability cases. *See Nelson,* 160 Wis.2d at 695, 467 N.W.2d at 524; *Burrows,* 115 Wis.2d at 277, 340 N.W.2d at 490; *Tauber–Arons,* 161 Cal.Rptr. at 796.

This court believes that imposing strict liability upon Rosen would satisfy only one of the public policy objectives—compensation (ability to spread the risk). Imposing strict liability upon Rosen would compensate Pelnar for his injuries. Pelnar, however, is not left without other remedies if he is unable to pursue his strict liability claim against Rosen. According to his complaint, Pelnar has received worker's compensation benefits.

Imposing strict liability on the defendant would fail to satisfy the other policy objectives of strict liability as delineated in *Tillman*. First, satisfaction of the reasonable purchaser or user (implied representational aspect) is not achieved by finding Rosen strictly liable since Schaus was aware that the purchase was "as is," and that the machine might require modification in order for it to be fit for use in the plant.

> [H]olding every dealer in used goods responsible regardless of fault for injuries caused by defects in his goods would not only affect the prices of used goods; it would work a significant change in the very nature of the used goods market ... If a buyer wants some assurance of quality, he typically either bargains for it in the specific transaction or seeks out a dealer who routinely offers it ... The flexibility of this kind of market appears to serve legitimate interests of buyers as well as sellers.

*Tillman*, 596 P.2d at 1303–04, *quoted in Burrows*, 115 Wis.2d at 277, 340 N.W.2d at 490. The *Tauber–Arons* court agreed that the used goods seller generally does not testify to the quality of the goods placed for sale. *Tauber–Arons*, 101 Cal.App.3d at 281, 161 Cal.Rptr. 789. "[T]he sale of a used product, without more, may not be found to generate the kind of expectations of safety that ... are justifiably created by the introduction of a new product into the stream of commerce." *Id.*

Neither is the other policy consideration—overall risk reduction (the impetus to manufacture a better product)—satisfied by imposing strict liability on Rosen. Rosen's function in the chain of manufacturing, distributing and retailing can, at best, be described as an occasional conduit between those links. Rosen has no consistent connection with any particular manufacturer. The amount of goods a manufacturer makes is not influenced by the success or failure of Rosen's business. "As to the risk-reduction aspect of strict liability, the position of the used-goods dealer is normally entirely outside the original chain of distribution of the product" resulting in insignificant, if any, risk-reduction. *Id.; Tillman*, 596 P.2d at 1304. To conclude, Rosen's motion with regard to Pelnar's strict liability claim will be granted.

### B. Negligence

The court now turns to Pelnar's alternate theory of liability, negligence. The plaintiff argues that the defendant breached its duty when it sold an unguarded bending machine to Schaus.

A party must demonstrate four distinct elements in order to maintain a negligence action: duty, breach, causation and damage. Duty triggers a negligence analysis with the perception of risk governing duty. Thus, if a defendant owes no duty to a plaintiff, there can be no negligence. When someone owes a duty they must exercise reasonable care with respect to that person or property. The existence of this duty is premised on the foreseeability of an unreasonable risk of harm, and judged by an objective standard examining what a reasonable person of ordinary prudence would foresee under the same or similar circumstances.

Wisconsin utilizes a broad duty rule imposing a duty on a person to exercise due care "to refrain from any act which will cause foreseeable harm to others even though the nature of that harm and the identity of the harmed person ... is unknown at the time of the act." *A.E. Investment Corp. v. Link Builders, Inc.*, 62 Wis.2d 479, 482, 214 N.W.2d 764, 766 (1974); *See Pfeifer v. Standard Gateway Theater, Inc.*, 262 Wis. 229, 55 N.W.2d 29 (1952); *Klassa v. Milwaukee Gas Light Co.*, 273 Wis. 176, 77 N.W.2d 397 (1956); *Rockweit v. Senecal*, 197 Wis.2d 409, 541 N.W.2d 742 (1995). The court in *Rolph v. EBI Companies.*, 159 Wis.2d 518, 464 N.W.2d 667 (1991), summarized Wisconsin's

common law duty requirements, and stated that "[a] defendant's duty is established when it can be said that it was foreseeable that his act or omission to act may cause harm to someone." *Id.* at 532, 464 N.W.2d at 672 *quoting Schuster v. Altenberg,* 144 Wis.2d 223, 235, 424 N.W.2d 159, 164 (1988).

The particular issue in this case is whether or not a duty exists on a seller of used equipment. Rosen argues that as a subsequent handler of the bending machine, it had no duty to add a guard or any other safety device to the bending machine after it had left Excel. Rosen relies on Wisconsin and California case law to support its assertion that it owed no duty to Pelnar with regard to the bending machine.

In *Rolph v. EBI Companies,* 159 Wis.2d 518, 464 N.W.2d 667 (1991), the Wisconsin Supreme Court, in analyzing ordinary negligence principles, found that a reconditioner of a machine did not have a duty to make the machines it refurbished conform with applicable safety standards. Parenthetically, the *Rolph* court also concluded that the doctrine of strict liability should not be imposed on the reconditioner for the policy reasons stated in *Burrows v. Follett & Leach, Inc.* In *Rolph,* the plaintiff was injured on a bending machine that his employer sent to be refurbished. 159 Wis.2d at 523, 464 N.W.2d 667. The court found that, under those facts, the manufacturer and not the reconditioner, owed a duty to the plaintiff to add safety devices to the bending machine. *Id.* at 537, 464 N.W.2d 667.

The *Rolph* court notes that situations exist in which liability for negligence may be limited upon public policy grounds. *Rolph,* 159 Wis.2d at 533, 464 N.W.2d at 672. In order to limit liability based on public policy considerations, one of six factors must exist.

(1) The injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tort-feasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point.

*Rolph,* 159 Wis.2d at 534, 464 N.W.2d at 673. The defendant in *Rolph* argued, and the court agreed, that allowance of recovery would enter a field that has no sensible or just stopping point. *Id.* at 535, 464 N.W.2d at 673. To expose every business that comes in contact with a product to potential liability "would shock the conscience of society because it would have no sensible or just stopping point." *Id.* The court further points out that no Wisconsin authority exists that support imposing common law negligence liability on a subsequent product handler for failing to correct defects created by manufacturers. *Id.*

■ This court similarly concludes that public policy dictates a limitation of liability as to Rosen under the facts of this case. Although Rosen engages in the business of selling used products, no facts exist to indicate that Rosen was other than a conduit for the products. Therefore, imposing liability for negligence on a subsequent product handler, like Rosen, would open up the possibility that no sensible or just stopping point exists.

Rosen also relies on *Brejcha v. Wilson Machinery, Inc.,* 160 Cal.App.3d 630, 206 Cal.Rptr. 688 (1984). *Brejcha* involves a similar fact situation to those of this case: a plaintiff suing an auctioneer that sold a machine "as is" to the plaintiff's employer. *See Id.* at 635, 206 Cal.Rptr. 688. Based on the "as is" nature of the machinery and trade custom associated with auctioning, the California court concluded that the auctioneer did not owe a duty to the plaintiff to add to or modify the machine since the term "as is" itself means that no modification is done to the item. *Id.* at 641, 206 Cal.Rptr. 688.

The court finds the reasoning in *Brejcha* to be persuasive. As discussed above, the factual similarities are compelling. Under the stipulated facts of this case, Rosen did not need to inspect the bending machine since the brochure advised potential purchasers that all machinery was being sold "as is."

Schaus admits that it understood that it was purchasing the bending machine "as is" and thus, if it was necessary to make any safety modifications, it was the responsibility of Schaus. Rosen had no duty to Pelnar and should not be subject to liability.

Rosen's motion with regard to Pelnar's negligence claim will be granted.

**IT IS THEREFORE ORDERED** that:

1. The defendant's motion for summary judgment with regard to the plaintiff's strict liability claim is **granted.**

2. The defendant's motion for summary judgment with regard to the plaintiff's negligence claim is **granted.**

3. Judgment shall be entered in favor of the defendant, **dismissing** plaintiff's complaint and this action with prejudice.