[Civ. No. 57980. Second Dist., Div. Five. Dec. 7, 1981.]

ROBERT E. WILKINSON, Plaintiff and Appellant, v.
ROY N. HICKS, Defendant and Respondent;
STATE COMPENSATION INSURANCE FUND, Intervener and
Appellant.

COUNSEL

Silver, McWilliams & Booth, Lawrence R. Booth and Donna Silver for Plaintiff and Appellant.

James J. Vonk, Robert M. Jakob, Arthur Hershenson and Louis L. Fayne for Intervener and Appellant.

Gary W. Sawtelle, Paladin, Kalajian & Clough and L. Haakon Clough for Defendant and Respondent.

OPINION

ASHBY, J.—In this personal injury action plaintiff Robert E. Wilkinson appeals from a judgment on a jury verdict in favor of defendant

Robert N. Hicks, doing business as Hicks Machinery Company. Plaintiff was injured in the course of his employment with Mac Smith Company when a punch press plaintiff was operating crushed his hand. The punch press, which was more than 50 years old, had been sold to plaintiff's employer by defendant Hicks, a dealer in used machinery. The jury found in favor of defendant on plaintiff's causes of action for negligence and breach of warranty. Plaintiff contends that the trial court erred in determining that plaintiff had no cause of action for strict products liability and in refusing to submit that issue to the jury.[1]

In normal operation of the machine, the operator placed a sheet of metal into the press and activated the machine by placing both hands on the dual palm control levers. The ram would come down once and stamp or punch the part, then go back up and stop. The operator would remove the finished product with his left hand. In this case as plaintiff was removing the product with his left hand the machine spontaneously started cycling again, crushing his hand.

According to plaintiff's evidence this continuous cycling or double tripping would have been prevented by a secondary safety device known as a stop shoulder, which this machine lacked. In normal operation, pressing the dual palm controls caused a part known as the throwout to move. This movement enabled pins on the camshaft which operated the ram to engage in holes in a flywheel attached to the motor. The ram would come down once, the throwout would return to its upright position and a constant drag brake would stop the camshaft after one cycle. The drag brake required fairly constant adjustment, however. If the drag brake was too loose it was possible for the pins to slip past the throwout and reengage the flywheel, causing the ram to double trip or cycle continuously.

In order to prevent such an occurrence, the original manufacturer, Niagara Machine & Tool Works, which built this particular machine in the 1920's, designed it with a stop shoulder on the throwout.

This machine was owned and operated for many years by Benmatt Industries, which sold it to defendant in 1972. It may be inferred that

---

[1]Plaintiff-in-intervention State Compensation Insurance Fund also appeals from the judgment.

at some unknown time during its ownership, Benmatt replaced the original throwout with one which lacked a stop shoulder.

Defendant Roy Hicks is a dealer in used machinery. He deals with a variety of products including punch presses. Generally if a machine he purchased was operable, he resold it "as is" without doing any reconditioning. This was true for about 50 to 60 percent of his stock. When reconditioning was required he had employees to do it.

Defendant purchased the instant machine, along with another, from Benmatt Industries in March 1972 for $750. Prior to the purchase, he observed it operate at Benmatt Industries and he could see it was in good running condition. Benmatt had not had any problem of double tripping with this machine. Defendant purchased it "as is" from Benmatt and it was transported to defendant's shop.

A few days later Arnold Ulrich, the president of Mac Smith Company, plaintiff's employer, went to defendant's place of business to shop for a punch press. He had purchased used machinery from defendant before. Defendant had about 20 power presses for sale and Ulrich selected this one as meeting his requirements. Ulrich wanted to trade in his old press, a Vernon. According to Ulrich he told defendant he was trading in the Vernon because it had double tripped, and he sought and received specific assurances that the Niagara did not double trip. According to defendant there was no discussion of double tripping.

The Niagara was actuated by a foot treadle. Because Ulrich wanted dual palm controls rather than a foot treadle, it was agreed Ulrich would take the dual palm control (Shrader device) off the Vernon and install it on the Niagara.

A price of $1,500 was agreed upon and the Niagara was sold with no written guarantee.

Defendant told his employees to prepare the machine for delivery. The motor and flywheel, which apparently had been removed for transportation from Benmatt, were remounted. The Niagara was tried out, and according to defendant's employee, Pete Suneson, it operated beautifully and therefore no adjustments, repairs, or modifications were done prior to delivery to Mac Smith Company. After delivery to Mac Smith Company, Ulrich and plaintiff removed the Shrader device from

the old Vernon and installed it on the Niagara. The accident occurred April 15, 1972.

The trial court held that plaintiff had no cause of action for strict products liability against a used machinery dealer, so the case went to the jury only on plaintiff's causes of action for negligence and breach of warranty. Plaintiff argued that defendant was negligent in failing to discover the lack of a stop shoulder on the throwout and in failing to correct that condition, and that defendant expressly and impliedly warranted that the machine would not double trip. Defendant contended he was not negligent, that the machine was sold "as is," and that the cause of the accident was not the absence of a stop shoulder but rather a defect in the Shrader device, or its improper installation by plaintiff's employer after delivery. The jury returned a general verdict for defendant.

## DISCUSSION

██ Assuming that the punch press was defective because the throwout lacked a stop shoulder, the issue presented by this appeal is whether a dealer in used machinery is subject to strict products liability for such a defect. (See generally Annot. (1973) 53 A.L.R.3d 337; Note (1979) 52 So.Cal.L.Rev. 805.) We hold the trial court correctly ruled that no controlling precedent supports imposition of such liability.

In *Green* v. *City of Los Angeles* (1974) 40 Cal.App.3d 819 [115 Cal.Rptr. 685], cited by plaintiff, the defendant Link-Belt sold a defective secondhand rebuilt crane. However, Link-Belt's liability was based on the fact that it made such extensive modifications to the crane before selling it that Link-Belt was "tantamount to a manufacturer." (*Id.*, at p. 838.) Here, on the other hand, defendant did not recondition the punch press.

Plaintiff relies heavily upon *Russell* v. *George Rose & Co., Inc.* (1969) 276 Cal.App.2d 456 [80 Cal.Rptr. 765], which is closely similar on its facts but which is not authority for the legal issue involved in this appeal. In *Russell* a person was injured by a defective gun which exploded the first time he fired it. He sued the army surplus retailer from whom he acquired the gun (Russell), the wholesaler (George Rose & Co., Inc.) and the importer (Interarmco). The manufacturer was not made a party to the action because the defect was created by unknown

previous owners subsequent to manufacture. The trial court had submitted the action to the jury based upon both strict liability and breach of warranty, and a verdict against all three defendants was rendered. However, the issue on appeal in *Russell* was not whether those dealers in used goods could properly be held strictly liable for postmanufacture product defects. The appeal was from a judgment of the trial court which dealt solely with the problem of the rights of the defendants to indemnity against each other. The court assumed for purposes of its discussion that the defendants had been found liable based upon strict product liability. Thus the point involved in the present appeal was assumed in *Russell*, but not discussed or decided. ■ Cases are not controlling authority for points which they do not discuss or decide. (*Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].)

■ Two very recent California cases have discussed whether a used machinery dealer should be strictly liable for product defects and have concluded no such liability should be imposed. (*Tauber-Arons Auctioneers Co.* v. *Superior Court* (1980) 101 Cal.App.3d 268 [161 Cal.Rptr. 789] [hg. den.]; *LaRosa* v. *Superior Court* (1981) 122 Cal.App.3d 741 [176 Cal.Rptr. 224] [hg. den.].) Tauber-Arons was an auctioneering company which sold at public auction the machinery of a company which was going out of business. One of the machines had a defect and the appellate court held that notwithstanding that Tauber-Arons was the "seller" of the product, it was not strictly liable. After reviewing the various policy bases for the doctrine of strict liability, the court concluded that extending such liability to dealers of used goods for defects in the original manufacture would be unjust. (*Id.*, 101 Cal.App.3d at p. 283.) Quoting from a decision by the Oregon Supreme Court, the court stated: "'We conclude that holding every dealer in used goods responsible regardless of fault for injuries caused by defects in his goods would not only affect the prices of used goods; it would work a significant change in the very nature of used goods markets. Those markets, generally speaking, operate on the apparent understanding that the seller, even though he is in the business of selling such goods, makes no particular representation about their quality simply by offering them for sale. If a buyer wants some assurance of quality, he typically either bargains for it in the specific transaction or seeks out a dealer who routinely offers it (by, for example, providing a guarantee, limiting his stock of goods to those of a particular quality, advertising that his used goods are specially selected, or in some other fashion). The flexibility of this kind of market appears to serve legitimate interests of buyers as

well as sellers. [¶] We are of the opinion that the sale of a used product, without more, may not be found to generate the kind of expectations of safety that the courts have held are justifiably created by the introduction of a new product into the stream of commerce.'" (*Id.*, at p. 281.)

The *LaRosa* case, like the instant case, involved a used punch press which triggered and crushed the worker's hands. It was purchased from a commercial dealer in used machinery who had sold other used machines to the worker's employer. The dealer did not have in stock a press of the type requested by the employer, but the dealer purchased one expressly for resale to the employer. The dealer did not inspect, use, modify or repair the machine, but had it shipped directly from the previous owner to the employer. The dealer had no direct connection with the manufacturer and disclaimed having made any representation as to the condition of the machine. (*Id.*, 122 Cal.App.3d at pp. 747-748.) The court upheld a summary judgment for the used machinery dealer, concluding there was no strict liability, whether the defect was in the original manufacture or arose subsequently. The court reviewed five policy reasons which were advanced for strict liability, and concluded that they did not support liability in the circumstances of that case. (*Id.*, at pp. 753-761.)

The instant case is distinguishable in some respects from *Tauber-Arons* and *LaRosa*, in that defendant had the facilities and employees to perform inspection, repair, and reconditioning when necessary, and did perform such functions with respect to some of his stock. However, like the dealer in *LaRosa* and unlike the dealer in *Green*, defendant did no repair or reconditioning to the machine involved in this case.

The fact that defendant had the facilities to repair is an argument for defendant's *negligence*, which was submitted to the jury and rejected. However, it is not a sufficient reason to hold the used machinery dealer strictly liable. To impose such liability would as a practical matter require all dealers in used goods routinely to dismantle, inspect for latent defects, and repair or recondition their products. Such a rule would effect a radical change in the nature of the used product market, which would deprive that market of the desirable flexibility referred to in *Tauber-Arons* and *LaRosa*. It would in effect render used goods dealers as insurers against defects which came into existence after the original chain of distribution and while the product was under the control of previous consumers. (*Peterson* v. *Lou Bachrodt Chevrolet Company*

(1975) 61 Ill.2d 17 [329 N.E.2d 785, 787]; *Rix* v. *Reeves* (1975) 23 Ariz.App. 243 [532 P.2d 185, 187].) We are unwilling to declare such a change in the law.

The judgment is affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.

The petition of plaintiff and appellant for a hearing by the Supreme Court was denied February 3, 1982. Kaus, J., did not participate therein.