David **KING**, Plaintiff–Appellant,

v.

**DAMIRON CORPORATION,**
Defendant–Appellee.

No. 96–2766.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 11, 1997.

Decided May 7, 1997.

Edward L. Murphy, Jr., Larry L. Barnard (argued), Miller, Carson, Boxberger & Murphy, Fort Wayne, IN, Humbert J. Polito, Faulkner & Boyce, New London, CT, for Plaintiff–Appellant.

Daniel K. Leininger, Thomas R. Lemon, R. Steven Hearn, Millard P. Plumlee, III (argued), Lemon, Armey, Hearn & Leininger, Warsaw, IN, for Defendant–Appellee.

Before COFFEY, MANION, and KANNE, Circuit Judges.

MANION, Circuit Judge.

David King was injured when an axle from a used truck detached and collided with his car. King sued Damiron Corporation, the seller of the used truck, alleging strict liability for the damage caused by the apparent defect. The district court held that under Connecticut law a dealer of used goods is not strictly liable for defects in the products it sells. We affirm.

## I.

While driving his car in Connecticut, David King was hit by a rear left tandem truck axle that had just detached from a semi-tractor driven by either Albert or Madeleine Morgan. The Morgans had three days earlier purchased the truck from Damiron Truck Center, located in Fremont, Indiana. Damiron had itself purchased the 1985 Kenworth tractor four days before selling it to the Morgans. When it purchased the truck, Damiron inspected it, took it for a test drive, and found it to be in satisfactory condition. At the time the Morgans purchased the truck "as is" from Damiron, Albert Morgan crawled under the truck, visually inspected it, and took it for a test drive.

According to the parties' experts, when the axle detached three days later, it did so for one of two reasons. Either there were two washers between the inner wheel bearing lock nut and outer wheel bearing lock nut (rather than one as originally designed by the manufacturer) or someone failed to properly install a locking washer. There is no evidence before the court that either Damiron or the Morgans knew of the defect, or that it could have been detected by a visual inspection.

King sued Damiron in the Northern District of Indiana under the court's diversity jurisdiction. See 28 U.S.C. § 1332(a)(1). King alleged breach of warranty, negligence, and, because Damiron was in the business of selling used trucks, strict liability in tort. The district court determined that Connecticut law governed King's claims, a determination that is not before us on appeal. The district court entered summary judgment for Damiron on all three theories of liability. King appeals only the strict liability claim. At issue is whether Connecticut recognizes or would recognize an action in strict product liability against a seller of used goods. The district court, having concluded that the issue had not yet been decided by Connecticut courts, set out to predict how the Supreme Court of Connecticut would decide the issue were it presented to it. See Smith v. Equitable Life Assur. Soc., 67 F.3d 611, 615 (7th Cir.1995) ("Sitting in diversity, we ... attempt[ ] to predict how the [state] Supreme Court would decide the issues presented here."). In a well-reasoned unpublished decision, the district court determined that the Connecticut court would not recognize a theory of strict product liability against a seller

of used goods. Having reviewed the issue *de novo, General Acc. Ins. Co. v. Gonzales,* 86 F.3d 673, 675 (7th Cir.1996), we affirm the district court and its reasoning.

## II.

■ Connecticut's Products Liability Act consolidated "all claims or actions brought for personal injury ... caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product ... [including but not limited to], all actions based on the following theories: Strict liability in tort; negligence; breach of warranty...." Conn.Gen.Stat. § 52–572m(b). The Act's purpose was not to create any new substantive rights but "to eliminate the complex pleading provided at common law." *Lynn v. Haybuster Manufacturing, Inc.,* 226 Conn. 282, 627 A.2d 1288, 1293 (1993). "Since the [Act] was not meant to eliminate common-law substantive rights but does not itself spell out the elements of the types of claims it consolidates ... the district court [should] assess plaintiffs' theories of recovery in light of the Connecticut common law requirements." *LaMontagne v. E.I. DuPont De Nemours & Co., Inc.,* 41 F.3d 846, 856 (2nd Cir.1994).

■ Connecticut has adopted the Restatement (Second) of Torts principles establishing strict liability in tort. "In order to recover under the doctrine of strict liability in tort the plaintiff must prove that: (1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale and (5) the product was expected to and did reach the consumer without substantial change in condition." *Giglio v. Connecticut Light & Power Co.,* 180 Conn. 230, 429 A.2d 486, 488 (1980) (citing Restatement (Second) of Torts § 402 A (1965)).

Although Connecticut has adopted strict liability in tort for manufacturers or distributors of new products, it has not done so for distributors of used products. King attempts to convince us otherwise, citing *Rossignol v. Danbury School of Aeronautics, Inc.,* 154 Conn. 549, 227 A.2d 418 (1967), and *Nichols v. Coppola Motors, Inc.,* 178 Conn. 335, 422 A.2d 260 (1979). Neither persuades us. *Rossignol* addressed whether the original manufacturer of an exhaust valve and the original manufacturer of an engine incorporating that exhaust valve could be held strictly liable where the aircraft in which the engine was installed had passed through numerous owners. The court noted that strict liability requires that the product reach the consumer without substantial change; this would have great significance where the product eventually became part of a "used, secondhand machine." 227 A.2d at 424. In so observing, the court neither stated nor suggested that strict liability now attached to sellers of those "used, secondhand machine[s]." In fact, the intermediate owners and sellers of the aircraft were not defendants in *Rossignol* and the case had nothing to do with strict product liability for the sellers of used goods. In *Nichols,* strict liability for used goods was not an appellate issue and was not addressed by the court. The court merely affirmed a general verdict which had been based on several theories of liability, one of which was strict liability. In doing so, the court discussed jury instructions and damages. It did not discuss strict liability.

■ We have found no cases in which the Supreme Court of Connecticut or lower Connecticut state courts have discussed the application of strict liability to dealers of used products. *See Fidelity Union Trust Co. v. Field,* 311 U.S. 169, 177–78, 61 S.Ct. 176, 177–78, 85 L.Ed. 109 (1940) (absent guidance from highest court we examine decisions of lower state courts); *see also Arnold v. Metropolitan Life Ins. Co.,* 970 F.2d 360, 361 (7th Cir.1992) (same). The district court determined, correctly it appears, that the issue was one of first impression in Connecticut. Absent guidance from Connecticut, the district court may look to other jurisdictions in its effort to determine how the Supreme Court of Connecticut would decide the issue. *Erie Ins. Group v. Sear Corp.,* 102 F.3d 889, 892 (7th Cir.1996). The district court did so, observing that "there is not a clear consensus

among other jurisdictions about whether a seller of used goods should be held liable under a theory of strict liability." *King v. Damiron Corp, et al.,* No. 1:95CV264, slip op. at 9 (N.D. Ind. June 19, 1996). Indeed there is not a clear consensus. Courts in seven states have held that even absent evidence a seller caused or could reasonably have detected a defect, the seller of defective used goods may be held strictly liable in tort. But courts in at least twelve other states have held otherwise. *Compare Jordan v. Sunnyslope Appliance Propane & Plumbing Supplies, Co.,* 135 Ariz. 309, 660 P.2d 1236, 1241 (Ct.App.1983) (holding dealer engaged in business of selling used goods strictly liable); *Turner v. International Harvester Co.,* 133 N.J.Super. 277, 336 A.2d 62, 69 (L.Div.1975) (seller of used motor vehicle, sold "as is," strictly liable for safety defects whether known or unknown); *Stiles v. Batavia Atomic Horseshoes, Inc.,* 174 A.D.2d 287, 579 N.Y.S.2d 790, 792 (N.Y.App.Div.1992) (regular seller of used products subject to strict liability); *Mixter v. Mack Trucks, Inc.,* 224 Pa.Super. 313, 308 A.2d 139, 142 (1973) (seller of used truck strictly liable for tire rim defective at time truck sold); *Hovenden v. Tenbush,* 529 S.W.2d 302, 310 (Tex.Civ.App. 1975) (holding sellers of used goods strictly liable); *Thompson v. Rockford Machine Tool Co.,* 49 Wash.App. 482, 744 P.2d 357, 361 (1987) (strict liability applies to dealer of used products); and *Nelson v. Nelson Hardware, Inc.,* 160 Wis.2d 689, 467 N.W.2d 518, 524–25 (1991) (seller of used products strictly liable "even though completely innocent or completely uninvolved in creating the defect") *with Kodiak Electric Assoc., Inc. v. DeLaval Turbine, Inc.,* 694 P.2d 150, 154 n. 6 (Alaska 1984) (sale of used item does not render seller strictly liable unless item has undergone extensive repair, inspection, and testing at hands of seller); *Wilkinson v. Hicks,* 126 Cal.App.3d 515, 179 Cal.Rptr. 5, 8 (1981) (refusing to extend strict liability to dealer of used goods); *Keith v. Russell T. Bundy & Associates, Inc.,* 495 So.2d 1223, 1227 (Fla.Dist.Ct.App.1986) ("Strict liability does not apply to a dealer in used equipment."); *Peterson v. Idaho First Nat. Bank,* 117 Idaho 724, 791 P.2d 1303, 1306 (1990) (no common law or statutory basis for imposing strict liability on commercial seller of used products); *Peterson v. Lou Bachrodt Chevrolet Co.,* 61 Ill.2d 17, 329 N.E.2d 785, 787 (1975) (declining to impose strict liability on dealer of used automobiles where no allegation defects were created by dealer); *Grimes v. Axtell Ford Lincoln–Mercury,* 403 N.W.2d 781, 785 (Iowa 1987) (where defect is not caused by dealer nor discoverable by reasonable and customary inspection, strict liability does not apply); *Sell v. Bertsch & Co., Inc.,* 577 F.Supp. 1393, 1399 (D.C.Kan.1984) (applying Kansas law; seller of defective used product who has not repaired or remanufactured product not strictly liable); *Harrison v. Bill Cairns Pontiac, Inc.,* 77 Md.App. 41, 549 A.2d 385, 392 (1988) (dealer in used products not strictly liable unless dealer created the defect); *Gorath v. Rockwell International, Inc.,* 441 N.W.2d 128, 131–32 (Minn.Ct.App.1989) (absent evidence that seller of used goods exercised control over design, manufacture, or warnings, had actual knowledge of defect, or created the defect, strict liability does not apply); *Brigham v. Hudson Motors, Inc.,* 118 N.H. 590, 392 A.2d 130, 135 (1978) (declining to extend application of strict liability to those in business of selling used vehicles); *Tillman v. Vance Equipment Co.,* 286 Or. 747, 596 P.2d 1299, 1304 (1979) (dealer of used equipment not strictly liable for defective used equipment sold "as is"); and *Crandell v. Larkin & Jones Appliance Co., Inc.,* 334 N.W.2d 31, 34 (S.D.1983) (agreeing with rationale of courts refusing to extend strict liability to sellers of used goods except in instance where seller has rebuilt or reconditioned goods).

These cases reveal not only that the states are split on whether and in what circumstances to hold a seller of used goods strictly liable, but they also reveal no trend that might convince a federal court sitting in diversity that the Connecticut Supreme Court was on the verge of changing the state's strict product liability law. If anything, they demonstrate that a majority of states weighing in on this have decided *against* extending strict liability to sellers of used goods who, as with Damiron, have not modified or repaired the product and who have sold it "as is." The district court, adopting a cautious approach, found itself in accord with the United

States District Court for the Western District of Missouri, which was considering the same question with regard to Missouri state products liability law and from which it quoted the following passage:

> The court finds that the factors justifying strict liability in other situations do not warrant imposition of strict liability for a dealer in used goods. The only policy rationale that is served by imposing liability in these circumstances is that innocent victims will be compensated. Although this is an important goal of our tort system, it is not the only goal.... The tort system is based on the "fundamental principle of fairness.".... Fairness in strict liability is not served by imposing strict liability here. A policy with CERCLA-like tentacles of liability used against these dealers will not improve the manufacture of the goods and will not prevent latent defects from being passed on to consumers. Consumer expectations are already being met in the used-goods market. Furthermore, the dealers in used goods are not well situated to bear the cost of insuring the goods they sell. Imposing strict liability here would risk destroying one of the few truly free markets left. The policy rationales weigh heavily against strict liability in the circumstances of this case.

> Based on the discussion above, this court finds that the Missouri Supreme Court would not extend strict liability to include to sellers [sic] of used goods who perform no maintenance, modification or repair on the used products and who successfully disclaim all warranties of title.

*King v. Damiron,* slip op. at 10–11 (quoting *Harber v. Altec Industries, Inc.,* 812 F.Supp. 954, 965–66 (W.D.Mo.), *aff'd,* 5 F.3d 339 (8th Cir.1993)).

Based on the analysis in *Harber,* the district court determined that were Connecticut, too, presented with the issue, it "would not extend strict liability to a seller of used motor vehicles who did not modify or repair the vehicle in any material respect and who sold the vehicle in an 'as is' condition." *Id.,* slip op. at 11. "To hold otherwise," the district court concluded,

> would effectively require that the defendant be held responsible for everything that has happened to the truck for over a period of eight years prior to its possession. Were that the case, the only way for the defendant to protect itself from liability for such claims would be for it to dismantle every vehicle it desires to sell to insure not only that prior owners had not altered the vehicle but also to insure that the component parts are put together in accordance with manufacturer's specifications.

*Id.,* slip op. at 11–12.

The district court's determination that the Supreme Court of Connecticut would not adopt strictly liability in tort for sellers of used goods was based on sound legal and policy analysis and was appropriate where Connecticut itself has not touched on the issue. We have counseled before that "federal courts sitting in diversity ought to be circumspect in expanding the law of a state beyond the boundaries established in the jurisprudence of the state." *Dausch v. Rykse,* 52 F.3d 1425, 1438 (7th Cir.1994) (Ripple, J. concurring, joined by Coffey, J. concurring). *See also Twin Disc, Inc. v. Big Bud Tractor, Inc.,* 772 F.2d 1329, 1333 (7th Cir.1985) ("Because we are unable to predict what the Wisconsin courts would do in such a case, and because of the substantial policy considerations involved, we hesitate to expand Wisconsin law to allow these tort claims in the absence of a more direct indication of intent by the state courts or Legislature."); *Torres v. Goodyear Tire & Rubber Co., Inc.,* 857 F.2d 1293, 1296 (9th Cir.1988) ("In this case, however, we hesitate prematurely to extend the law of products liability in the absence of an indication from the Arizona courts or the Arizona legislature that such an extension would be desirable. We have limited discretion in a diversity case 'to adopt untested legal theories brought under the rubric of state law.'")

## III.

■ Having surveyed Connecticut product liability law, as well as the law in other states, we conclude that the district court correctly declined to expand Connecticut

strict product liability law to include dealers of used motor vehicles such as Damiron. Accordingly, we affirm the district court's entry of summary judgment for the defendants on the cautious ground that Connecticut has not and likely would not extend strict product liability on the facts of this case.