2001 OK 22

Jack ALLENBERG, Surviving next-of-kin of AvaPattee Allenberg, Deceased, Plaintiff/Appellant,

v.

BENTLEY HEDGES TRAVEL SERV. INC., Bentley Hedges Park & Fly Inc., Lowell Hite Arvieux, Defendants,

and

Arkansas Bus Exchange Corp., Defendant/Appellee.

Arkansas Bus Exchange Corp., Third Party Plaintiff.

v.

National Coach Corp., Eldorado Nat'l Co., Thor Indus., Inc., EBC, Inc., Gelco Corp., and John Doe, Mfr., and Budget Rent–A–Car Systems, Inc., a Delaware Corp., Third Party Defendants.

Nancy (Leigh) Norman Gray, Personal Representative of the Estate of Gwinn Norman, Plaintiff/Appellant,

v.

Bentley Hedges Travel Serv. Inc., Bentley Hedges Park & Fly Inc., Lowell Hite Arvieux, Defendants,

and

Arkansas Bus Exchange Corp., Defendant/Appellee.

Arkansas Bus Exchange Corp., Third Party Plaintiff,

v.

National Coach Corp., Eldorado Nat'l. Co., Thor Indus., Inc., EBC, Inc., Gelco Corp. and John Doe, Mfr., and Budget Rent–A–Car Systems, Inc., a Delaware Corp., Third Party Defendants.

No. 95,400.

Supreme Court of Oklahoma.

March 6, 2001.

Rehearing Denied April 24, 2001.

Ed Abel, Lynn B. Mares, Oklahoma City, OK, for Plaintiffs/Appellants.

Chris Harper, Harry R. Palmer, Jr., Phillip P. Owens II, Oklahoma City, OK, for Defendant/Third Party, Plaintiff/Appellee.

Tom Cooper, Oklahoma City, OK, for Budget Rent–A–Car/Third Party Defendant.

KAUGER, J.:

¶ 1 The first impression question presented is whether manufacturers' products liability is applicable to the commercial seller of a used product if the alleged defect was not created by the seller, and if the product is sold in essentially the same condition as when it was acquired for resale.[1] We have determined that it is not.

### FACTS

¶ 2 On July 16, 1997, Bentley Hedges Travel arranged transportation to the airport for Ava Pattee Allenberg and her daughter, Gwinn Norman (passengers), in a used shuttle bus which it had purchased from the appellee, Arkansas Bus Exchange (Arkansas Bus). While en route to the airport, the driver of the bus ran a red light causing the bus to collide with other vehicles in an intersection. Both passengers were seated on the left side of the bus facing the center aisle. The bus was not equipped with seat belts, and the passengers were flung from their seats and injured in the collision. Ava Allenberg died a few days after the accident.

¶ 3 On February 19, 1998, Gwinn Norman, filed a lawsuit on her own behalf and another lawsuit as the personal representative of her mother's estate. She sued Bentley Hedges Travel and the driver of the bus alleging that they were negligent. She also sued Arkansas Bus alleging that it had distributed and sold a defective, unreasonably dangerous shuttle bus because the bus was not equipped with seat belts, adequate handholds, or secured luggage compartments. Bentley Hedges and the bus driver were later dismissed from the lawsuit.

¶ 4 Arkansas Bus filed answers in both causes, denying the allegations and asserting that it could not be liable because it did not manufacture, design, or produce the bus, nor did it alter, change or modify the bus in any way from its original condition. It also filed third party indemnity claims against National Coach Corp., Eldorado National Corp., Thor Industries, Ebc, Inc., Gelco Corp., John Doe, Manufacturer, and Budget Rent–A–Car Systems (Budget) as manufacturers of the bus and/or predecessors, successors or subsidiaries. According to the pre-trial order, the third party indemnity claims, with the exception of the claim against Budget, were

---

1. It is undisputed that the bus exchange was engaged in the business of selling new and used shuttle buses. Consequently, our use of the term "commercial seller" refers to a seller who is in the business of selling used goods. We note that some courts have refused to extend strict liability on the basis that the seller or dealer was not in the business of selling used products. See, e.g., *Geboy v. TRL Inc.*, 159 F.3d 993, 999 (7th Cir. 1998) [Under Wisconsin law, strict liability is inapplicable to occasional buyers and sellers of used goods.]; *Bruce v. Martin–Marietta Corp.*, 418 F.Supp. 837, 843 (W.D.Okla.1975) [Under Missouri law, strict liability inapplicable if not in the business of selling used airplanes.]; *Stiles v. Batavia Atomic Horseshoes, Inc.*, 81 N.Y.2d 950, 597 N.Y.S.2d 666, 613 N.E.2d 572, 573, (1993) [Strict liability inapplicable to seller engaged in incidental transactions.]; *Timm v. Indian Springs Recreation Assoc.*, 187 Ill.App.3d 508, 543 N.E.2d 538, 542, 135 Ill.Dec. 155 (1989) [Strict liability inapplicable if not in business of selling.]; *Santiago v.. E.W. Bliss Division*, 201 N.J.Super. 205, 492 A.2d 1089, 1100 (1985) [Strict liability inapplicable to occasional seller of used product.].

later dismissed without prejudice or summary judgment was entered in their favor.[2]

¶ 5 On April 27, 1999, Arkansas Bus filed motions for summary judgment in both causes, arguing that the bus was neither defective nor the proximate cause of Ava Allenberg's or Gwinn Norman's injuries. The trial court denied the motions on July 23, 1999. While the lawsuits progressed, Gwinn Norman died of causes unrelated to the accident and her brother, Jack Allenberg (estate representative), was substituted as surviving next-of-kin of Ava Allenberg. Gwinn Norman's daughter, Nancy Gray, was substituted as her mother's personal representative.

¶ 6 On July 17, 2000, Arkansas Bus again filed motions for summary judgment in both causes, arguing that the doctrine of manufacturers' products liability is inapplicable to commercial sellers of used products. On July 24, 2000, Budget Rent–A–Car also filed motions for summary judgment. On August 16, 2000, both causes were consolidated for trial. However, on September 27, 2000, the trial court entered judgment in favor of Arkansas Bus, finding that the shuttle bus was a used vehicle when the bus exchange purchased it and that it did not alter, modify, rebuild or restore the bus. It also determined that Budget's motion for summary judgment was moot.

¶ 7 The estate representatives appealed on October 23, 2000, and filed a motion to retain the cause in this Court. On December 18, 2000, we retained the cause to address the first impression question regarding the application of manufacturers' products liability to the seller of a used product if the alleged defect was not created by the seller, and if the product is sold in essentially the same condition as when it was acquired for resale.

¶ 8 **MANUFACTURERS' PRODUCTS LIABILITY IS INAPPLICABLE TO THE COMMERCIAL SELLER OF A USED PRODUCT IF THE ALLEGED DEFECT WAS NOT CREATED BY THE SELLER, AND IF THE PRODUCT IS SOLD IN ESSENTIALLY THE SAME CONDITION AS WHEN IT WAS ACQUIRED FOR RESALE.**

■ ¶ 9 We note at the outset that the basis of the estate representatives' lawsuits was that the shuttle bus was defective because it "had no seat belts, no protection from hard rails and surfaces, and that seats and luggage came loose in the collision" causing the passengers severe injuries. We have not previously addressed whether, under these circumstances, the bus may be defective,[3] and we need not decide the issue today.

---

2. It appears that National Coach Corp., was never served with the lawsuit.

3. Had Arkansas Bus been subject to manufacturers' products liability under the facts presented, it would have had the opportunity to prove that the bus was not defective or the proximate cause of the injuries because the trial court previously denied Arkansas Bus' summary judgment motions which argued that the undisputed facts establish that the bus was not defective nor the proximate cause of the injuries. Subsequently, Arkansas Bus filed another motion for summary judgment, arguing that manufacturers' products liability does not apply to commercial sellers of used products as a matter of law. The trial court entered judgment on the second summary judgment motion and the estate representatives appealed the question of law, insisting that the commercial seller of a used product may be liable. Consequently, the arguments regarding whether the bus is defective are not before us in this appeal. Nevertheless, we note that in their June 7, 1999, response to the bus exchange's motion for summary judgment, the estate representatives conceded that the vehicle was in compliance with applicable federal safety standards, but argued that such standards do not ensure that a vehicle is not defective. Neither party mentions whether any specific state safety standards were applicable to this particular type of bus, nor have we found any. Although the facts regarding the particulars of this bus are vague, one affidavit in the record mentions that the bus was completed in March 1991, and had a gross vehicle weight rating (GVWR) of more than 10,-000 pounds. The applicable safety standards regarding occupant crash protection are found at 49 C.R.R. § 571.208 (2000). S4.3.2 of § 571.208 requires that trucks and multipurpose passenger vehicles with a GVWR of 10,000 pounds or more manufactured after September 1, 1990, have some type of seat belt system. However, buses manufactured on or after September 1, 1990, are required to have seat belt systems for drivers only. Section 571.208, S4.4.2 et seq. Manufacturers are required to install in buses manufactured after September 1, 1991, with GVWR of 10,000 pounds or more certain types of seat belt systems for all seating positions. Nothing regarding the padding of hard surfaces or confining luggage is mentioned in these standards. It is noteworthy that the Court of Civil Appeals, in

The only issue presented is the question of law regarding whether the commercial seller of a used product can be subjected to manufacturers' products liability for alleged defects not created by the seller, and if the product is sold in essentially the same condition as when it was acquired for resale.

¶10 Arkansas Bus contends that the undisputed facts reveal that any defects were created by the manufacturer and that it purchased the shuttle bus in a used condition and, other than changing the oil and/or tires, it did not warrant, recondition, change, alter, modify, or rebuild the bus before it sold it to Bentley Hedges.[4] It argues that, under these circumstances, commercial sellers of used goods are not subject to strict liability for injuries caused by defects which were present at the time of original distribution. It urges us to join the majority of jurisdictions which have considered the issue and which have determined that strict liability does not extend to commercial sellers of used products if the alleged defect was not created by the seller, and if the product is sold in essentially the same condition as when it was acquired for resale.[5]

*Attocknie v. Carpenter Manufacturing, Inc.*, 1995 OK CIV APP 54, 901 P.2d 221, determined that a common law manufacturers' products liability action against school bus manufacturers for a defectively designed bus due to the failure to include seat belts was not pre-empted by federal law. Although we recently held in *Bishop v. Takata Corp.*, 2000 OK 71, ¶ 6, 12 P.3d 459, that the Mandatory Seat Belt Use Act does not prohibit introduction of evidence of the use or non-use of seat belts in a manufacturers' products liability action for a defective seat restraint, we have not addressed the pre-emption issue. Additionally, the United States Supreme Court in *Geier v. American Honda Motor Co.*, 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000), recently determined that common law manufacturers' products liability actions are pre-empted when the state law actually conflicts with the Department of Transportation standards relating to air bags.

4. Strict liability has been extended to the commercial seller of used products who makes repairs or reconditions the product. See, *Realmuto v. Straub Motors, Inc.*, 65 N.J. 336, 322 A.2d 440, 444 (1974); *Petrus Chrysler–Plymouth v. Davis*, 283 Ark. 172, 671 S.W.2d 749, 751 [Strict liability applied to used car that had defect and has undergone repair at buyers request.]; See also, *Messler v. Simmons Gun Specialties, Inc.*, 1984 OK 35, 687 P.2d 121, [Although the commercial seller was not a party to the lawsuit, we recognized liability for injuries caused by a defect in the product as manufactured or sold and sustained by user of an altered product may be imposed on the manufacturer or commercial seller. The manufacturer or commercial seller is not liable if the alteration is responsible for the defect and is an intervening or superceding cause.].

5. *King v. Damiron Corp.*, 113 F.3d 93, 97 (7th Cir.1997) [Under Connecticut law, dealer not strictly liable for defects in used truck it sold.]; *Wynia v. Richard–Ewing Equipment Co., Inc.*, 17 F.3d 1084, 1088 (8th Cir.1994) [Under South Dakota Law, strict liability did not apply to commercial seller of used product who neither rebuilt nor reconditioned product, nor was otherwise a middleman.]; *Harber v. Altec Industries, Inc.*, 5 F.3d 339 (8th Cir.1993) [Under Missouri Law, commercial seller of used utility truck who performed no maintenance, modification or repair on used product not strictly liable.]; *Sell v. Bertsch & Co., Inc.*, 577 F.Supp. 1393, 1398 (D.Kan.1984) [Commercial seller of used product who has not repaired or remanufactured the product not subject to strict liability.]; *Peterson v. Idaho First Nat. Bank*, 117 Idaho 724, 791 P.2d 1303, 1306 (1990) [No common law or statutory basis for extending strict liability to commercial seller of used mobile home who sells the used product in essentially the same condition as when it was acquired for resale.]; *Grimes v. Axtell Ford Lincoln–Mercury*, 403 N.W.2d 781, 785 (Iowa 1987) [Strict liability does not apply to used car dealership which purchased a used axle from a salvage yard and installed it in a van because defect was not caused by dealer nor discoverable by reasonable and customary inspection.]; *Kodiak Electric Assoc., Inc. v. DeLaval Turbine, Inc.*, 694 P.2d 150, 154 (Alaska 1984) [Commercial seller of used item does not render commercial seller liable unless item has undergone extensive repair, inspection and testing at the hands of the commercial seller prior to resale.]; *Crandell v. Larkin & Jones Appliance Co., Inc.*, 334 N.W.2d 31, 33 (S.D.1983) [Agreeing with rationale of courts refusing to extend strict liability to commercial sellers of used goods except in instance where commercial seller has rebuilt or reconditioned goods.]; *Brigham v. Hudson Motors, Inc.*, 118 N.H. 590, 392 A.2d 130, 135 (1978) [Strict liability not applicable to commercial seller of used motor vehicles.]; *Tillman v. Vance Equip. Co.*, 286 Or. 747, 596 P.2d 1299, 1301 (1979) [Commercial seller of used crane was not strictly liable in tort for a defect that was created by the manufacturer.]; *Peterson v. Lou Bachrodt Chevrolet Co.*, 61 Ill.2d 17, 329 N.E.2d 785, 786–87 (1975) [Strict liability not imposed to dealer of used automobiles.]; *Gorath v. Rockwell Int'l, Inc.*, 441 N.W.2d 128, 131 (Minn.App.1989) [Relying on statute and rationale from other jurisdictions, refused to apply strict liability to commercial seller of used goods unless the commercial seller was more than a

¶ 11 Oklahoma adopted the theory of manufacturers' products liability in *Kirkland v. General Motors Corp.*, 1974 OK 52, 521 P.2d 1353. The *Kirkland* teaching is that the seller of a product in a defective condition, which is unreasonably dangerous to the user or consumer, is strictly liable for the physical harm to the person or property caused by the defect. This theory of recovery is based on the Restatement (Second) of Torts, § 402A (1965).[6]

¶ 12 To maintain a cause of action under manufacturers' products liability, the plaintiff must prove the product was the cause of the injury, that the product was defective when it left the control of the manufacturer and that the defect made the product unreasonably dangerous beyond which would be contemplated by the ordinary consumer who purchases it.[7] In *Kirkland*, we defined manufacturers as "processors, assemblers, and all other persons who are similarly situated in processing and distribution." We recognized that manufacturers' products liability is founded upon public interest in human safety and that the rationale for adopting the rule is that the manufacturer of the product is responsible for the product reaching its market, and the manufacturer is best situated to provide protection against the risk of injuries caused by a defective product.[8]

¶ 13 We have not previously determined whether manufacturers' products liability should apply to commercial sellers of used products when the alleged defect was not created by the seller, and the product was sold in essentially the same condition as when it was acquired for resale. However, since *Kirkland*, and consistent with its rationale, manufacturers' products liability has been applied to various members of the manufacturers' marketing chain.[9] For instance,

middleman and had some involvement with the condition of the product.]; *Harrison v. Bill Cairns Pontiac of Marlow Heights, Inc.*, 77 Md. App. 41, 549 A.2d 385, 392 (1988) [Used car dealer not strictly liable for defect.]; *Keith v. Russell T. Bundy & Assoc., Inc.*, 495 So.2d 1223, 1227 (Fla.App. 5 Dist.1986) [Used equipment dealer not strictly liable for defect caused by manufacturer.]; *Masker v. Smith*, 405 So.2d 432, 434 (Fla.App. 5 Dist.1981) [Strict liability does not extend to used car dealer for latent defect for which dealer was not responsible and could not have been discovered by exercise of reasonable care.]; *Wilkinson v. Hicks*, 126 Cal.App.3d 515, 521, 179 Cal.Rptr. 5 (1981) [Strict liability does not extend to dealer of used goods who neither repairs nor reconditions products.]; *LaRosa v. Superior Court*, 122 Cal.App.3d 741, 176 Cal. Rptr. 224, 233 (1981) [Commercial seller of used punch press was not strictly liable.]; *Tauber–Arons Auctioneers Co. v. Superior Court*, 101 Cal. App.3d 268, 161 Cal.Rptr. 789, 797 (1980) [Recognizing that extending strict liability to dealers of used goods for defects in the original manufactured product would be unjust.].

6. The Restatement (Second) of Torts, § 402A (1965) provides:
   "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
   (a) the seller is engaged in the business of selling such a product, and·
   (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

   (2) The rule stated in Subsection (1) applies although
   (a) the seller has exercised all possible care in the preparation and sale of his product, and
   (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

7. *Bishop v. Takata Corp.*, see note 3 at ¶ 7, supra; *Hutchins v. Silicone Specialties, Inc.*, 1993 OK 70, ¶ 14, 881 P.2d 64; *Kirkland v. General Motors Corp.*, 1974 OK 52, ¶ 29–31, 521 P.2d 1353.

8. In *Kirkland v. General Motors Corp.*, see note 7, supra, we quoted the concurring opinion in *Escola v. Coca–Cola Bottling Co.*, 24 Cal.2d 453, 150 P.2d 436 (1944) as best stating the rationale for the rule:

   " 'It is to the public interest to discourage the marketing of products that are a menace to the public. If such products nevertheless find their way into the market it is to the public interest to place the responsibility for whatever injury that may occur upon the manufacturer, who, even if he is not negligent in the manufacture of the product, is responsible for its reaching the market. However intermittently such injuries may occur and however haphazardly they may strike, the risk of their occurrence is a constant risk and a general one. Against such risk there should be general and constant protection, and the manufacturer is best situated to provide such protection.' "

9. Prior to *Kirkland v. General Motors Corp.*, see note 7, supra, we held in *Hembree v. Southard*, 1959 OK 91, ¶ 25, 339 P.2d 771, that a used car dealer who represented that automobile was in

it has been held applicable to retailers,[10] dealers or distributors,[11] importers,[12] and lessors.[13]

¶ 14 The estate representatives contend that manufacturers' products liability should extend to anyone in the business of placing a product in the stream of commerce, including those who sell used goods. They rely on our application of strict liability to retailers in *Moss v. Polyco*, 1974 OK 53, 522 P.2d 622, and our extension of strict liability to lessors in *Dewberry v. LaFollette*, 1979 OK 113, 598 P.2d 241. They also cite to the few jurisdictions which have extended strict liability to commercial sellers of used products.[14]

¶ 15 In *Moss v. Polyco*, 1974 OK· 53, 522 P.2d 622, we explained the rationale for holding non-manufacturer-suppliers to the same liability standard as manufacturers. Relying on cases from other jurisdictions, we noted that: 1) retailers like manufacturers, are engaged in the business of distributing goods to the public; 2) because they are an integral part of the overall producing and marketing enterprise, they should bear the cost of injuries resulting from defective products; 3) in some cases the retailer may be the only member of the marketing chain reasonably available to the public; and 4) in other cases the retailer may play a substantial part in insuring that the product is safe or may be in a position to exert pressure on the manufacturer to make the product safer.[15]

¶ 16 Following the trend of other jurisdictions, in *Dewberry v. LaFollette*, 1979 OK 113, 598 P.2d 241, we expanded strict liability to include lessors engaged in the business·of leasing chattels even when no sale is involved on the basis that such persons put products into the stream of commerce in a fashion not unlike a manufacturer or retailer. Adopting

---

good condition is charged with knowledge of defective brakes which were discoverable in the exercise of ordinary care and is amenable to a negligence action for damages resulting from such defects.

**10.** *Fields v. Volkswagen of America, Inc.* 1976 OK 48, ¶ 8, 555 P.2d 48; *Moss v. Polyco, Inc.*, 1974 OK 53, ¶ 13, 522 P.2d 622.

**11.** *Braden v. Hendricks*, 1985 OK 14, ¶ 12, 695 P.2d 1343 [Recognizing strict liability of manufacturer and distributor or dealer is co-extensive.]. See also, *Jordan v. General Motors Corp.*, 1979 OK 10, 590 P.2d 193 [Strict liability action involving manufacturer and commercial seller/dealer of new cars, although new car commercial seller/dealer was indemnified and held harmless.].

**12.** *Messler v. Simmons Gun Specialties, Inc.*, see note 4, supra.

**13.** *Dewberry v. LaFollette*, 1979 OK 113, ¶ 17, 598 P.2d 241. Similarly, in *Coleman v. Hertz Corp.*, 1975 OK CIV APP. 5, ¶ 20, 534 P.2d 940, the Court of Civil Appeals determined that manufacturers' products liability should be extended to a commercial supplier such as a truck leasing company. But see, *Gonser v. Decker*, 1991 OK CIV APP 64, ¶ 8, 814 P.2d 1056, refusing to extend strict liability to a defendant who is neither a commercial seller nor lessor but merely uses or allows use of equipment in providing a service.

**14.** *Gonzalez v. Rutherford Corp.*, 881 F.Supp. 829, 844 (E.D.N.Y.1995) [Under New York Law, regular commercial seller of used products may be strictly liable for injuries caused by products .]; *Nelson v. Nelson Hardware, Inc.*, 160 Wis.2d 689, 467 N.W.2d 518, 523–24 (1991) [Commercial seller of used shotgun strictly liable even though condition arose out of the original manufacturing process.]; *Frey v. Harley Davidson Motor Co., Inc.*, 1999 PA Super 130, 734 A.2d 1, 8. [Any policy consideration that would militate against imposing strict liability on commercial seller of used product would not apply to defendant motorcycle commercial seller.]; *Stanton v. Carlson Sales, Inc.*, 45 Conn.Supp. 531, 728 A.2d 534, 543 (1998) [Doctrine of strict liability applied to commercial seller of used machine.]; *Nutting v. Ford Motor Co.*, 180 A.D.2d 122, 584 N.Y.S.2d 653, 659 (1992) [Commercial seller of used vehicles is subject to strict liability for sale of vehicle with alleged defective condition.]; *Thompson v. Rockford Machine Tool Co.*, 49 Wash.App. 482, 744 P.2d 357, 360 (1987) [Strict liability for design and manufacturing defects applies to dealer of used goods.]; *Jordan v. Sunnyslope Appliance Propane & Plumbing Supplies Co.*, 135 Ariz. 309, 660 P.2d 1236, 1239 (1983)[Dealer engaged in business of selling used propane storage tank strictly liable for harm resulting from the unreasonably dangerous condition of product.]; *Hovenden v. Tenbush*, 529 S.W.2d 302, 309 (Tex.Civ.App.1975) [Strict liability applies to commercial seller of used bricks.]; *Turner v. International Harvester Co.*, 133 N.J.Super. 277, 336 A.2d 62, 68 (1975) [Safety of general public demands that commercial seller of used goods be subject to strict liability.].

**15.** See also, *Braden v. Hendricks*, note 11, at ¶ 17, supra for a discussion on the various rationales

the reasoning of the Pennsylvania Supreme Court in *Francioni v. Gibsonia Truck Corp.,* 472 Pa. 362, 372 A.2d 736, we noted that: 1) in some instances the lessor, like the commercial seller, may be the only member of the marketing chain available to the injured plaintiff for redress; 2) as in the case of the commercial seller, imposition of strict liability upon the lessor serves as an incentive to safety; 3) the lessor is in a better position than the consumer to prevent circulation of defective products; and 4) the lessor can distribute the cost of compensation for injuries resulting from defects by adjusting the rental terms. The estate representatives now ask that the same liability be imposed upon the commercial seller of used shuttle buses.

¶ 17 For three decades, courts from other jurisdictions have struggled with the question of whether or under what circumstances the commercial seller of used products should be liable for a defect attributable to the initial design or manufacturing of a used product.[16] Their answers are as varied as the many different fact situations involved, resulting in a split in authority.[17] Despite

conflicting results reached by these jurisdictions, the courts generally agree that resolution of the question hinges upon the policies which underpin strict liability and whether those policies are promoted by applying the doctrine to commercial sellers of used products if the alleged defect was not created by the seller, and if the product is sold in essentially the same condition as when it was acquired for resale.[18]

¶ 18 Some courts have imposed strict liability on commercial sellers of used products because they conclude that the Restatement (Second) of Torts, § 402A [19] is not limited by its terms to commercial sellers of new products.[20] These courts have found that the same policy reasons for which we previously applied strict liability to manufacturers, retailers, dealers or distributors, importers and lessors, should also apply to dealers in used goods.[21]

¶ 19 In contrast, courts which have declined to extend the strict liability to commercial sellers of used products have noted that the policy reasons which underlie strict liability are not fully applicable to commer-

---

courts have offered to hold non-manufacturer-suppliers to the same liability as manufacturers.

**16.** Restatement (Third) of Torts, Products Liability § 8 comment (a) p. 166 (1998); See generally, Bateman, T.A, Annot., "Products Liability: Application of Strict Liability Doctrine to Seller of Used Product," 9 A.L.R.5th 1 (1993).

**17.** Attempting to reconcile varied approaches courts have taken under the many different fact situations involved, the Restatement (Third) of Torts, Products Liability § 8 (1997) addresses liability of commercial sellers or distributors of used products. It provides that:

"One engaged in the business of selling or otherwise distributing used products who sells or distributes a defective used product is subject to liability for harm to persons or property caused by the defect if the defect:
(a) arises from the seller's failure to exercise reasonable care; or
(b) is a manufacturing defect under s2(a) or a defect that may be inferred under s3 and the seller's marketing of the product would cause a reasonable person in the position of the buyer to expect the used product to present no greater risk of defect than if the product were new; or
(c) is a defect under s2 or s3 in a used product remanufactured by the seller or a predecessor in the commercial chain of distribution of the used product; or

(d) arises from a used product's noncompliance under s4 with a product safety statute or regulation applicable to the used product.
A used product is a product that, prior to the time of sale or other distribution referred to in this Section, is commercially sold or otherwise distributed to a buyer not in the commercial chain of distribution and used for some period of time."

The impact of the Third Restatement has yet to be seen in the courts, and it has been approached with considerable caution. See, e.g., *Stanton v. Carlson Sales, Inc.,* note 14, supra.

**18.** See generally, Note, "The Application of Strict Liability in Tort to the Retailers of Used Products: A Proposal," 16 Okla. City U.L.Rev. 373 (1991); Note, "Protecting the Buyer of Used Products: Is Strict Liability for Commercial Sellers Desirable?," 33 Stan. L.Rev. 474 (1981).

**19.** Restatement (Second) of Torts, § 402A (1965), see note 6, supra.

**20.** See, e.g., *Nelson v. Nelson Hardware, Inc,* note 14, supra; *Stanton v. Carlson Sales, Inc.,* note 14, supra; *Thompson v. Rockford Machine Tool Co.,* note 14, supra; *Jordan v. Sunnyslope Appliance Propane & Plumbing Supplies Co.,* note 14, supra; *Hovenden v. Tenbush,* note 14, supra.

**21.** *Id.*

cial sellers of used products. For instance, in *Tillman v. Vance Equipment Co.*, 286 Or. 747, 596 P.2d 1299, 1301 (1979), the Oregon Supreme Court held that a commercial seller of a used crane was not strictly liable for a defect created by the manufacturer. The court looked to the purposes behind the strict liability doctrine and found them inapplicable to used product commercial sellers— at least in the absence of some representations of quality beyond the sale itself or of a special position of the commercial seller vis-a-vis the original manufacturer or others in the chain of original distribution.

¶ 20 In refusing to subject the commercial seller of used goods to the same liability as manufacturers, the *Tillman* Court reasoned that: 1) generally, used goods markets operate on the apparent understanding that the commercial seller makes no particular representation about the quality of the used goods simply by offering them for sale; 2) if the buyer wants assurances of quality, the buyer typically either bargains for it or seeks out dealers who routinely offer it; 3) the sale of a used product, without more, may not be found to generate the kind of expectations of safety that the courts have held are justifiably created by the introduction of a new product into the stream of commerce; 4) the position of the used-goods dealer is normally entirely outside the original chain of distribution of the product; 5) and there is typically no ready channel of communication by which the dealer and the manufacturer exchange information about possible dangerous defects in particular product lines or about actual and potential liability claims.

¶ 21 Although the *Tillman* court did not address whether a lessor would be subject to strict liability, it also noted that a commercial seller of used products differs from a lessor in that:

> "the lessor chooses the product which he offers in a significantly different way than does the typical dealer in used goods; the fact that he offers them repeatedly to different users as product he has selected may constitute a representation as to their quality; and it may well be that he has purchased them, either new or used, from a dealer who is directly related to the original distribution chain." [22]

¶ 22 Since *Tillman*, the majority of courts have either expressly or implicitly followed its rationale and have concluded that the doctrine of strict liability should not be extended to commercial sellers of used goods, at least when the alleged defects were not created by the seller, and/or the product was sold in essentially the same condition as when it was acquired for resale.[23] Here, the undisputed facts reveal that any alleged defects were created by the manufacturer and Arkansas Bus purchased the shuttle bus in a used condition and, other than changing the oil and/or tires, it did not warrant, recondition, change, alter, modify, or rebuild the bus the before it sold the bus to Bentley Hedges. Consequently, under the facts presented, we align ourselves with the majority view and refuse to extend manufacturers' products liability to the commercial seller of the used bus.

## CONCLUSION

¶ 23 Strict liability is imposed upon manufacturers because the manufacturer of the product is responsible for the product reaching its market, and the manufacturer is best situated to provide protection against the

**22.** See also, *Kemp v. Miller*, 154 Wis.2d 538, 453 N.W.2d 872, 878 (1990); and *American Aerial Lift, Inc. v. Perez*, 629 So.2d 169, 172 (1993), recognizing the distinction between a commercial seller of used products and lessors.

**23.** See, *King v. Damiron Corp.*, note 5, supra; *Wynia v. Richard–Ewing Equipment Co., Inc.*, note 5, supra; *Harber v. Altec Industries, Inc.*, note 5, supra; *Sell v. Bertsch & Co., Inc.*, note 5, supra; *Peterson v. Idaho First Nat. Bank*, note 5, supra; *Grimes v. Axtell Ford Lincoln–Mercury*, note 5, supra; *Kodiak Electric Assoc., Inc. v. DeLaval Turbine, Inc.*, note 5, supra; *Crandell v.*

*Larkin & Jones Appliance Co., Inc.*, note 5, supra; *Brigham v. Hudson Motors, Inc.*, note 5, supra; *Tillman v. Vance Equip. Co.*, note 5, supra; *Peterson v. Lou Bachrodt Chevrolet Co.*, note 5, supra; *Gorath v. Rockwell Int'l, Inc.*, note 5, supra; *Harrison v. Bill Cairns Pontiac of Marlow Heights, Inc.*, note 5, supra; *Keith v. Russell T. Bundy & Assoc., Inc.*, note 5, supra; *Masker v. Smith*, note 5, supra; *Wilkinson v. Hicks*, note 5, supra; *LaRosa v. Superior Court*, note 5, supra; *Tauber–Arons Auctioneers Co. v. Superior Court*, note 5, supra.

risk of injuries caused by a defective product.[24] It is also applied to non-manufacturer-suppliers because that they are engaged in the business of distributing goods to the public and they are an integral part of the overall producing and marketing enterprise.[25] However, the majority of courts find the same policy reasons for applying strict liability to manufacturers and non-manufacturer suppliers inapplicable to used product commercial sellers, at least if the alleged defect was not created by the seller, and the product is sold in essentially the same condition as it was acquired for resale.[26] Today, under the facts presented, we agree with the majority view.

**TRIAL COURT AFFIRMED.**

¶ 24 ALL JUSTICES CONCUR.

---

24. *Kirkland v. General Motors Corp.,* see note 7, supra.

25. *Moss v. Polyco, Inc.,* see note 10, supra; *Dewberry v. LaFollette,* see note 13, supra.

26. See, *King v. Damiron Corp.,* note 5, supra; *Wynia v. Richard–Ewing Equipment Co., Inc.,* note 5, supra; *Harber v. Altec Industries, Inc.,* note 5, supra; *Sell v. Bertsch & Co., Inc.,* note 5, supra; *Peterson v. Idaho First Nat. Bank,* note 5, supra; *Grimes v. Axtell Ford Lincoln–Mercury,* note 5, supra; *Kodiak Electric Assoc., Inc. v. DeLaval Turbine, Inc.,* note 5, supra; *Crandell v. Larkin & Jones Appliance Co., Inc.,* note 5, supra; *Brigham v. Hudson Motors, Inc.,* note 5, supra; *Tillman v. Vance Equip. Co.,* note 5, supra; *Peterson v. Lou Bachrodt Chevrolet Co.,* note 5, supra; *Gorath v. Rockwell Int'l, Inc.,* note 5, supra; *Harrison v. Bill Cairns Pontiac of Marlow Heights, Inc.,* note 5, supra; *Keith v. Russell T. Bundy & Assoc., Inc.,* note 5, supra; *Masker v. Smith,* note 5, supra; *Wilkinson v. Hicks,* note 5, supra; *LaRosa v. Superior Court,* note 5, supra; *Tauber–Arons Auctioneers Co. v. Superior Court,* note 5, supra.